432 So.2d 239 (1983)
Murphy LeBLANC, et al.
v.
Lawrence DAVIS.
No. 82-C-2544.
Supreme Court of Louisiana.
May 23, 1983.
*240 Ralph Tureau, Tureau & Mire, Gonzales, for relator.
Murphy W. Bell, Baton Rouge, for respondent.
MARCUS, Justice.
This action involves an attempt by members of an unincorporated religious organization to dismiss their pastor.
Plaintiffs, members of the African Universal Church of Christ, contend that their pastor, Lawrence Davis, was removed by a majority of church members, but has refused to relinquish his pastoral duties and is preventing them from enjoying use of their church property. They filed this action to enjoin him from continuing as pastor. Davis filed an exception of lack of subject matter jurisdiction, arguing the matter was a church dispute that could only be resolved on the basis of the rules, customs and pastoral edicts of the church. He also filed an exception of no right of action alleging that the seventeen church members who signed the petition for injunctive relief had since been excommunicated retroactive to a date prior to their filing the petition. The trial judge referred defendant's exceptions to the merits. Twelve church members joined as plaintiffs by amended petition.
After a hearing in which defendant and one witness for each side testified, the trial judge granted a preliminary injunction restraining Davis from assuming the roll of pastor of the church during the pendency of the proceedings. The judge did not expressly rule on defendant's exceptions.
Defendant filed a rule to dissolve the injunction. The African Universal Church of Christ, appearing by authority of its executive officers,[1] intervened uniting with defendant in resisting plaintiffs' demand. After a hearing, the trial judge, finding that the church articles adequately expressed that the pastor be chosen by a "majority of the membership of the church" and that plaintiffs had shown that a majority of the church members had opposed defendant continuing as pastor, overruled the exceptions previously filed but not ruled upon and denied dissolution of the injunction.[2] He also refused to suspend the injunction pending an appeal.
Upon application by the African Universal Church of Christ, intervenor on side of defendant, the court of appeal granted a writ and reversed the judgment of the district court overruling the exception of lack of subject matter jurisdiction, sustained the exception, and dissolved the preliminary injunction. On plaintiffs' application, we granted certiorari to review the correctness of that judgment.[3]
*241 We must first determine whether resolution of this case requires interference in matters of church doctrine, practice or administration so as to violate the protection guaranteed by the first and fourteenth amendments of the federal constitution and article one, section eight of our state constitution and prohibit judicial review.
Civil courts are prohibited from interfering in the ecclesiastical matters of a religious group, that is, in matters concerning religious discipline, faith, rule, custom or law. Serbian Eastern Orthodox Diocese for United States of America and Canada v. Milivojevich, 426 U.S. 696, 96 S.Ct. 2372, 49 L.Ed.2d 151 (1976); Fluker Community Church v. Hitchens, 419 So.2d 445 (La.1982). Our courts have held that ecclesiastical matters are not at issue when a petition alleges that a pastor has been dismissed by his church members but has refused to leave and the church members ask the court to decide whether an injunction is warranted. Rose Hill Baptist Church v. Jones, 425 So.2d 348 (La.App.3d Cir.1982). Nor are ecclesiastical matters at issue when the court is required to determine whether church members conducted an election according to the procedure set forth in the church's charter. Wilkerson v. Battiste, 393 So.2d 195 (La.App. 1st Cir.1980).[4]
In the instant case, the district court was called upon to determine whether under the founding resolutions of the African Universal Church of Christ the proper procedure for dismissal of a pastor was by majority rule of the church members, whether Lawrence Davis had in fact been dismissed from his pastoral duties by a majority of the church members, and whether Davis' refusal to relinquish his pastoral duties warranted injunctive relief. Under our jurisprudence as stated above, no interpretation or evaluation of ecclesiastical doctrine or practice was called for in plaintiffs' petition. Hence, the trial judge correctly overruled defendant's exception of lack of subject matter jurisdiction and the court of appeal erred in reversing that ruling.
Having determined that the instant case was within the district court's subject matter jurisdiction, we now consider whether the trial judge erred in finding that majority rule was the proper procedure for dismissal of Davis as pastor and that a majority of the church members did in fact oppose Davis.
In 1944, the founders of the African Universal Church of Christ adopted a set of resolutions which provided, inter alia, that a pastor "can only be chosen for one year providing if he give satisfaction" and that he would be "chosen by the church, and not elected, for we do not run politics in church." Women were denied any voice in church business "unless it is to choose for a pastor or officer."
The church was pastored by the same minister, Leon West, until 1975 when Reverend West became ill. At that time, eight church members, including plaintiffs' witness Nellie LeBlanc, acting on their own initiative, asked Reverend West to obtain defendant's services as associate pastor until Reverend West was able to resume his duties. Defendant's services were obtained. Reverend West died a couple of months later. According to Nellie LeBlanc, the church traditionally made major decisions, including the choosing of a pastor, by the majority of the members and Davis remained on after Reverend West's death because church members were satisfied with him at that time. Defendant's witness, Eula Payton, the current church secretary, testified that the church never voted on things, rather the pastor would make a decision and everyone just went along with it. Yet, according to Payton, Davis was *242 "elected" as pastor by church members at a legal meeting and this election was recorded by the prior church secretary. Those records allegedly had never been turned over to the church. Defendant testified that he had been unanimously chosen by church members during a legally-conducted business meeting. He further testified it was his understanding that the proper way to remove him would be to notify the membership.
We agree with the trial judge that the founding resolutions of the African Universal Church of Christ provide that a pastor be "chosen," or removed, by a majority of the church's members. The history of Davis' selection as pastor, including his own testimony thereon, supports this interpretation.
However, even if we were to find that the church resolutions did not provide for majority rule, under the "neutral principles of law" approach set forth in Jones v. Wolf, 443 U.S. 595, 99 S.Ct. 3020, 61 L.Ed.2d 775 (1979) and adopted by us in Fluker Community Church v. Hitchens, 419 So.2d 445 (La.1982) for resolving non-ecclesiastical church disputes, we find that the majority rule would control Davis' selection and removal as pastor. Under neutral principles analysis, there is a presumption that, absent some indication to the contrary, a voluntary religious association is represented by a majority of its members. Fluker, supra. We find nothing in the founding resolutions of the African Universal Church of Christ contrary to the presumption that majority rule controls the appointment or removal of a pastor.
We now address the issue of whether the trial judge erred in finding that a majority of the church members did in fact oppose defendant as pastor. None of the witnesses deny that on March 11, 1981, a petition to remove Davis was circulated and was signed by nineteen church members, the majority of whom were the surviving founders of the church. Nor do any deny that on April 5, 1982, at a regularly-scheduled meeting, a motion was made and seconded to dismiss Davis as pastor. The parties do disagree on whether a vote was actually taken at that meeting. Defendant's witness, Eula Payton, the church secretary, testified that no vote was taken on the motion to dismiss Davis. The movers were told it "wasn't legal" and the vote was not allowed. However, plaintiffs' witness, Nellie LeBlanc, testified that a majority of the church members at the meeting did vote to remove Davis and that the vote should have been recorded because it was done while minutes were being taken. When defendant testified, his only contention was that the church body had not been notified they would be electing a pastor at that meeting. From the church secretary's testimony, it is apparent that no record was even made of those church members attending the meeting, although upon request she started compiling a roll of the church membership.
Twenty-nine plaintiffs have joined in the petition to enjoin Davis from continuing as pastor. The record shows that defendant accepts a roll of forty-two church members, compiled by the church secretary, his witness, as the official roll of church members in good standing. Twenty-two plaintiffs are listed on that roll. Thus, a majority of the church members are plaintiffs in the instant suit.
After reviewing the record, we are unable to say that the trial judge was clearly wrong in concluding that the majority of church members opposed Davis' continuation as pastor. Certainly, the fact that twenty-two of the forty-two church members have joined in the petition to enjoin Davis as pastor supports this finding.[5]
The final issue for our determination is whether injunctive relief was properly *243 granted in this case. Plaintiffs contend that defendant's continued presence as pastor prevented them from pursuing their religious beliefs and from enjoying the use of their church property. In argument before this court, reference was also made to the fact that the church's bank account had been frozen until this controversy be resolved. Under these circumstances, we are unable to say that the trial judge erred in granting injunctive relief. La.Code Civ.P. art. 3601.
In sum, we find that the court of appeal erred in reversing the judgment of the district court overruling the exception of lack of subject matter jurisdiction and in dissolving the preliminary injunction. Because this controversy does not require inquiry into ecclesiastical matters, it was within the subject matter jurisdiction of the district court. The record amply supports the trial judge's findings that under the church's resolutions the appointment of a pastor is controlled by the majority of church members and that Davis' continuation as pastor has been opposed by a majority of the members of the church. Additionally, plaintiffs made a sufficient showing for injunctive relief.

DECREE
For the reasons assigned, the judgment of the court of appeal is reversed. The judgment of the district court is reinstated. The case is remanded to the district court for further proceedings in accordance with law.
NOTES
[1] These executive officers have never been identified. There is some testimony to the effect that defendant is the only executive officer of the church. The church's founding resolutions provide for a board of trustees and a board of deacons. All the original members thereof are deceased. The record shows that there are no trustees at this time and only one man is alleged to be a deacon but there is some question as to whether he is still a member of the church.
[2] The trial judge noted that at the conclusion of the first day of the hearing for injunctive relief, the matter had been continued until the next day only to permit plaintiffs to offer additional evidence on the congregation's membership and whether an actual majority of the congregation had opposed defendant; however, he had expressed his opinion to each party at that time that plaintiffs had made a prima facie case and were entitled to a preliminary injunction. When defendant's attorney was hospitalized and did not appear the next day, he determined that it was better to issue the preliminary injunction rather than to continue the hearing indefinitely.
[3] 423 So.2d 1154 (La.1983).
[4] In Wilkerson v. Battiste, 393 So.2d 195 (La. App. 1st Cir.1980), the church articles of incorporation provided that appointment of a pastor would be by the church board of directors and that election of the board of directors would be by majority vote of the church members. The court held that the pastor's appointment was an ecclesiastical matter not subject to review by a civil or secular court. The election of the board of directors by the majority of church members was held to be a procedural issue and to have nothing to do with religious law, custom or policy and therefore was considered subject to judicial review.
[5] We are not called upon to examine the merits of defendant's excommunication of seventeen plaintiffs retroactive to a date prior to the filing of the instant petition. That excommunication does not affect the vote taken at the April 5, 1982 meeting nor does it change the fact that twenty-two church members have sought the aid of the court in enforcing the dismissal of defendant.