911 So.2d 907 (2005)
Ivan HAWTHORNE, Plaintiff-Appellant
v.
Michael R. COUCH and The Apostolic Tabernacle, Inc., Defendants-Appellees.
No. 40,162-CA.
Court of Appeal of Louisiana, Second Circuit.
September 21, 2005.
Rehearing Denied October 20, 2005.
*908 Rountree Law Office, APLC, by James A. Rountree, Monroe, for Appellant.
Cook, Yancey, King & Galloway, by Herschel E. Richard, Jr., Shreveport, for Appellees.
Before BROWN, DREW and LOLLEY, JJ.
LOLLEY, J.
Ivan Hawthorne appeals the judgment of the Fifth Judicial District Court, Parish of Franklin, Louisiana, granting the exceptions of lack of subject matter jurisdiction and no right of action brought by Michael R. Couch and the Apostolic Tabernacle, Inc. (collectively, the "appellees"). For the following reasons, we affirm the trial court's judgment.

FACTS
This case is solely one regarding tithes paid by Hawthorne to the Apostolic Tabernacle, Inc. In July 2004, Ivan Hawthorne filed suit against Michael R. Couch and the Apostolic Tabernacle, Inc. (the "Apostolic Tabernacle"). In his petition, Hawthorne sought repayment to him of tithes he paid the church, in addition to damages, reasonable attorney fees, and costs of the proceedings. The petition alleged that Couch, the pastor of the Apostolic Tabernacle, obtained Hawthorne's tithe by exerting a powerful influence over members of his church, demanding total submission to his authority, and gaining complete control of the members' minds and money. Hawthorne further alleged that Couch involved himself in the day-to-day business of Healthworks International, LLC, "the business plaintiff shared with Sam Noble" ("Healthworks"). According to Hawthorne, Couch exerted "complete control over the minds of plaintiff and Noble and other executives in Healthworks International."[1] In particular, Hawthorne alleged that Couch told him and Noble that they had to increase their tithes, and that Couch convinced them to pay tithes on the gross income of Healthworks; Couch allegedly *909 threatened Hawthorne with "judgment and hell" if he did not pay up.
Hawthorne stated in his petition that Couch knew his teaching was not biblical, but that Couch was "overwhelmed with greed and power" and at some point had the idea that he would take over Healthworks. Hawthorne alleged that the effort to comply with Couch's false teaching was bankrupting the company, and when Couch felt he had the owners and the company "on their knees," he offered to purchase the business for a nominal sum.
Hawthorne indicated that he always intended to tithe on his income, as opposed to the gross receipts of Healthworks, that Hawthorne gave money to the appellees under duress, and that Hawthorne felt he did not have free will. Hawthorne also asserted that Couch's "misrepresentation of the Bible" was fraud, that Couch knew his teaching was false, and that Couch knew Hawthorne was relying upon that teaching in making excessive contributions to the appellees' enrichment. Finally, Hawthorne asserted that when Couch had "sucked [Hawthorne] dry," he turned on Hawthorne and attempted to drive a wedge between Hawthorne and his wife who remained a member of the Apostolic Tabernacle.
Couch and the Apostolic Tabernacle filed an exception of vagueness asserting that the petition failed to plead the circumstances constituting the purported fraud with sufficient particularity. Couch and the Apostolic Tabernacle also subsequently filed an exception of lack of subject matter jurisdiction and an alternative partial exception of no right of action. The exception of subject matter jurisdiction asserted that Hawthorne's petition revealed that the matter essentially involved a dispute over the calculation of the biblical tithe and was "bottomed on issues of biblical interpretations and divergent views on religious scripture and doctrine." The appellees alleged that the First Amendment to the United States Constitution and Article 1, § 8 of the Louisiana Constitution forbid courts from becoming immersed in biblical interpretation and religious controversy and in the interpretation and evaluations of ecclesiastical doctrines and practices.
In the alternative, the appellees alleged that the trial court should dismiss those portions of the matter that alleged damage, including a diminished value to Healthworks, because Hawthorne in his individual capacity had no right of action to assert such claims on behalf of the limited liability company.
The exceptions came on for hearing at the trial court. After hearing witness testimony and considering argument of counsel, the trial court took the matter under advisement. Ultimately the exceptions filed by Couch and the Apostolic Tabernacle were granted. As to the exception of no right of action, the trial court noted that Hawthorne had conceded he must amend his petition to include Healthworks as a party-plaintiff. The exception of lack of subject matter jurisdiction was also granted, with the trial court noting that under both federal and state jurisprudence, civil courts are prohibited from resolving church disputes requiring the interpretation of church laws and practices, as well as being prohibited from interfering with ecclesiastical and administrative church matters. This appeal by Hawthorne ensued.

DISCUSSION
On appeal, Hawthorne raises two related assignments of error regarding the trial court's ruling on the appellees' exception *910 of lack of subject matter jurisdiction.[2]
The First Amendment of the United States Constitution and Article 1, Section 8 of the Louisiana Constitution both guarantee religious freedom and have been interpreted to forbid courts from interfering in the ecclesiastical matters of religious groups. Glass v. First United Pentecostal Church of DeRidder, 95-1442 (La.App. 3d Cir.06/12/96), 676 So.2d 724, citing, Serbian Eastern Orthodox Diocese for U.S. of America and Canada v. Milivojevich, 426 U.S. 696, 96 S.Ct. 2372, 49 L.Ed.2d 151 (1976); Wilkerson v. Battiste, 393 So.2d 195 (La.App. 1st Cir.1980). This prohibition extends to matters of religious discipline, faith and/or custom. See also LeBlanc v. Davis, 432 So.2d 239 (La.1983), citing, Serbian Eastern Orthodox Diocese, supra; Fluker Community Church v. Hitchens, 419 So.2d 445 (La.1982).
Not all church disputes necessarily involve purely ecclesiastical matters. For instance, a civil trial court may have subject matter jurisdiction when a petition alleges that a pastor has been dismissed by his church members but has refused to leave, and the church members ask the court to decide whether an injunction is warranted. See LeBlanc, supra. In resolving these sorts of disputes, Louisiana courts have relied on the "neutral principles of law" approach set forth in Jones v. Wolf, 443 U.S. 595, 99 S.Ct. 3020, 61 L.Ed.2d 775 (1979) and adopted by the Louisiana Supreme Court in Fluker, supra. This approach is not without difficulty, because it requires a civil court to examine certain religious documents, such as a church constitution, with an attitude of neutrality and non-entanglement. Glass, supra.
However, where the "dispute is rooted in an ecclesial tenet" of the church, the trial court will not have subject matter jurisdiction of the matter. In the instant case, the testimony on the exception of lack of subject matter jurisdiction focused almost exclusively on Couch's teachings regarding tithing. Without question, any legal analysis that would require the trial court to analyze and pass judgment upon such teachings would violate the "neutral principles of law" approach discussed above. The issue of tithing is at its core a purely ecclesiastical matter. In fact, in a letter to Couch, Hawthorne's counsel characterized the issue as "this religious problem," which Hawthorne preferred to deal with in a "religious forum." Accordingly, the trial court correctly concluded that it lacked subject matter jurisdiction. Likewise, to the extent that Hawthorne had marital difficulties springing from conflicting opinions between himself and his wife concerning Couch's biblical teachings, such difficulties and conflicts are beyond the jurisdiction of the civil courts.
Hawthorne also argues that the trial court erred in dismissing his claims, because no religious implications need to be considered in the revocation of his donations to the Apostolic Tabernacle. Under the provisions of La. C.C. art. 1479:
A donation inter vivos or mortis causa shall be declared null upon proof that it is the product of influence by the donee or another person that so impaired the volition of the donor as to substitute the volition of the donee or other person for the volition of the donor.
*911 Here, Hawthorne's allegations that relate to the validity of his consent are rooted in the religious teachings or beliefs of Couch and the Apostolic Tabernacle. Hawthorne alleged that Couch "threatened" him with "judgment and hell" if Hawthorne failed to make proper tithes. Although Hawthorne claimed not to have "free will" and his gifts were made under duress due to the fraud allegedly perpetrated by Couch, Hawthorne further characterized the pastor's position as "false teaching" based on his misinterpretation of the Bible. At the hearing on the matter, Hawthorne explained his view regarding Couch's preaching on tithes as:
. . . he taught lengthy messages bringing in a lot of different scriptures, some Old Testament and some New, taught that you know, you had to tithe to be saved, it-your salvation hinged on it.
We agree with the trial court's findings rejecting Hawthorne's claim that his consent to donate was vitiated by error, fraud, or duress. Whereas Hawthorne masks his claims with legal terms such as "consent," "error," "fraud," and "duress," this controversy is indeed purely religious. Any consideration of Hawthorne's claims would require a court to examine the interpretation of the Bible on the subject of tithing which was applied by Couch and then make a determination of whether that interpretation was or was not fraudulent. A civil court is in no position to make a judicial determination of what is and what is not a correct biblical interpretation. Furthermore, to consider whether Couch was attempting to substitute his volition for Hawthorne's would likewise require a court to consider the biblical basis of Couch's "threats" aimed at Hawthorne. A court would have to consider Couch's intent in directing such statements at Hawthorne, which again would require an interpretation of the basis for the comments, i.e., the Bible. For instance, in considering the allegation that Hawthorne was "threatened" with "judgment and hell" for failing to give sufficiently, a court would need to delve into the issue of whether such statement was an actual threat to coerce Hawthorne to donate money or rather a literal interpretation of the Bible as believed by Couch. Clearly, as discussed herein, such an analysis is outside the subject matter jurisdiction of a civil trial court.
Moreover, at all times herein, Hawthorne possessed the free will to simply walk away from this controversy by disassociating himself from Couch and the Apostolic Tabernacle. That would have ended the controversy concerning the amount of tithe he did or did not give to the church, and all parties would then have been free to live by any biblical interpretation they chose concerning this subject.
By even requesting this or any other civil court to issue a ruling on such a clearly ecclesiastical matter runs the honored issue of separation of church and state to the very edge of the fabric. The Founders showed incredible foresight in setting up our system of government where the lines should never cross on such issues, and the courts should and do maintain a neutral posture.
Finally, La. C.C.P. art. 932(A) provides that "when the grounds of the objections pleaded in the declinatory exception may be removed by amendment of the petition or other action of plaintiff, the judgment sustaining the exception shall order the plaintiff to remove them within the delay allowed by the court." (Emphasis added). Here, the trial court simply dismissed Hawthorne's claims for lack of subject matter jurisdiction, without allowing Hawthorne the opportunity to amend his petition. Although Hawthorne does not raise this issue on appeal, we cannot see any scenario under which Hawthorne's *912 petition could have been amended so as to give the trial court subject matter jurisdiction over Hawthorne's claims. As stated, this litigation involves tithing, which, no matter how a claim might be worded, is based on the Bible and its interpretation. The trial court was correct in not allowing Hawthorne an opportunity to amend his petition.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to Ivan Hawthorne.
AFFIRMED.
APPLICATION FOR REHEARING
Before BROWN, GASKINS, DREW, MOORE, and LOLLEY, JJ.
Rehearing denied.
NOTES
[1] Interestingly enough, Healthworks was found liable for religious discrimination against one of its employees from 1999-2000 who was not Apostolic, but Baptist. See Robinson v. Healthworks Intern., L.L.C., 36,802 (La.01/29/03), 837 So.2d 714, writ denied, XXXX-XXXX (La.05/16/03), 843 So.2d 1120.
[2] Hawthorne did not appeal the trial court's grant of the exception of no right of action. However, we note that the trial court was correct in sustaining the exception of no right of action with respect to Hawthorne's claims on behalf of Healthworks, which was not a plaintiff in this lawsuit and, as a separate legal entity, would need to join the litigation as a plaintiff in order to litigate any claims that it may have.