946 So.2d 288 (2006)
Ivan HAWTHORNE and Healthworks International, LLC, Plaintiff-Appellant
v.
Michael R. COUCH, Defendant-Appellee.
No. 41,603-CA.
Court of Appeal of Louisiana, Second Circuit.
December 20, 2006.
*290 James A. Rountree, for Appellants, Ivan Hawthorne and Healthworks International, LLC.
Cook, Yancey King & Galloway, by Herschel Erskine Richard, Jr., Shreveport, John Tucker Kalmbach, Jason B. Nichols, for Appellees, Michael R. Couch and The Apostolic Tabernacle, Inc.
Before STEWART, DREW and LOLLEY, JJ.
DREW, J.
Ivan Hawthorne and Healthworks International, LLC, of which Hawthorne is a member, appeal a judgment dismissing their suit against defendants, Michael Couch and Apostolic Tabernacle, Inc., the church where Couch is pastor.[1] The trial court granted defendants' exceptions of res judicata and lack of subject matter jurisdiction, and awarded attorney fees and expenses of $22,852.19 to defendants after dissolving plaintiffs' writ of sequestration. We affirm.

FACTS
Much of the relevant background in this case can be gleaned from an opinion in a previous appeal involving a lawsuit ("Hawthorne *291 I") brought by Hawthorne against these same defendants:
This case is solely one regarding tithes paid by Hawthorne to the Apostolic Tabernacle, Inc. In July 2004, Ivan Hawthorne filed suit against Michael R. Couch and the Apostolic Tabernacle, Inc. (the "Apostolic Tabernacle"). In his petition, Hawthorne sought repayment to him of tithes he paid the church, in addition to damages, reasonable attorney fees, and costs of the proceedings. The petition alleged that Couch, the pastor of the Apostolic Tabernacle, obtained Hawthorne's tithe by exerting a powerful influence over members of his church, demanding total submission to his authority, and gaining complete control of the members' minds and money. Hawthorne further alleged that Couch involved himself in the day-to-day business of Healthworks International, LLC, "the business plaintiff shared with Sam Noble" ("Healthworks"). According to Hawthorne, Couch exerted "complete control over the minds of plaintiff and Noble and other executives in Healthworks International." In particular, Hawthorne alleged that Couch told him and Noble that they had to increase their tithes, and that Couch convinced them to pay tithes on the gross income of Healthworks; Couch allegedly threatened Hawthorne with "judgment and hell" if he did not pay up.
Hawthorne stated in his petition that Couch knew his teaching was not biblical, but that Couch was "overwhelmed with greed and power" and at some point had the idea that he would take over Healthworks. Hawthorne alleged that the effort to comply with Couch's false teaching was bankrupting the company, and when Couch felt he had the owners and the company "on their knees," he offered to purchase the business for a nominal sum.
Hawthorne indicated that he always intended to tithe on his income, as opposed to the gross receipts of Healthworks, that Hawthorne gave money to the appellees under duress, and that Hawthorne felt he did not have free will. Hawthorne also asserted that Couch's "misrepresentation of the Bible" was fraud, that Couch knew his teaching was false, and that Couch knew Hawthorne was relying upon that teaching in making excessive contributions to the appellees' enrichment. Finally, Hawthorne asserted that when Couch had "sucked [Hawthorne] dry," he turned on Hawthorne and attempted to drive a wedge between Hawthorne and his wife who remained a member of the Apostolic Tabernacle.
* * * * *
The exceptions came on for hearing at the trial court. After hearing witness testimony and considering argument of counsel, the trial court took the matter under advisement. Ultimately the exceptions filed by Couch and the Apostolic Tabernacle were granted. As to the exception of no right of action, the trial court noted that Hawthorne had conceded he must amend his petition to include Healthworks as a party-plaintiff. The exception of lack of subject matter jurisdiction was also granted, with the trial court noting that under both federal and state jurisprudence, civil courts are prohibited from resolving church disputes requiring the interpretation of church laws and practices, as well as being prohibited from interfering with ecclesiastical and administrative church matters. . . .
Hawthorne v. Couch, 40,162 (La.App.2d Cir.9/21/05), 911 So.2d 907, 908-9 (footnote omitted). This court affirmed the judgment granting the defendants' exception of *292 no right of action and lack of subject matter jurisdiction.
While that appeal was pending, Hawthorne and Healthworks filed suit ("Hawthorne II") against Couch on July 1, 2005. It was alleged in Hawthorne II that Couch was in possession of a bulldozer, a welding machine, and a trailer that belonged to one or both plaintiffs.[2] Plaintiffs complained that when they attempted to recover these items from Couch, he asserted that the equipment had been donated by Healthworks to him. Plaintiffs also alleged that they had a lessor's lien on an airplane that had been stored in their hangar until shortly before the petition was filed. The remedies sought by plaintiffs were an award of rent for Couch's possession of the bulldozer, welding machine, and trailer, and use of the hangar, and the issuance of a writ of sequestration against the three pieces of equipment and the airplane. The trial court subsequently ordered the seizure of the airplane, bulldozer, trailer, and welding machine.
Couch filed a motion to dissolve the writ of sequestration on July 12, 2005. Among the grounds that Couch cited in support of his motion was that the writ should be dissolved as to the bulldozer, trailer, and welding machine because he did not assert any interest in any of that property. He also contended that the writ should be dissolved as to the airplane because plaintiffs had not asserted the existence of a lease to support their claim of a lessor's privilege.
On July 25, 2005, in response to plaintiffs' main demand in the petition, Couch filed the exceptions of res judicata, lack of subject matter jurisdiction, prescription, no cause of action, and lack of procedural capacity. On July 27, 2005, the trial court granted leave to Hawthorne and Healthworks to amend their petition to add Apostolic Tabernacle, Inc., as a defendant.
Following a hearing in which the trial court heard testimony and accepted various documents into evidence, the trial court granted the exceptions of res judicata and lack of subject matter jurisdiction, dissolved the writ of sequestration, and dismissed Hawthorne and Healthworks' claim with prejudice. Regarding the dissolution of the writ of sequestration, the trial court awarded attorney fees of $22,582.19 to defendants. Hawthorne and Healthworks appealed, complaining that the trial court erred in sustaining the exceptions of lack of subject matter jurisdiction and res judicata, and in awarding attorney fees related to the dissolution of the writ of sequestration.

DISCUSSION
Lack of Subject Matter Jurisdiction
In Glass v. First United Pentecostal Church of DeRidder, 95-1442 (La.App. 3d Cir.6/12/96), 676 So.2d 724, 728-9, the court discussed the prohibition against courts refereeing disputes that are grounded upon matters of ecclesiastical doctrine. Attached as an appendix to that opinion were the trial court's reasons for judgment, which set forth the relevant law on that issue:
The First Amendment of the United States Constitution and Article 1, Section 8 of the Louisiana Constitution both guarantee religious freedom and have been interpreted to forbid courts from interfering in the ecclesiastical matters of religious groups. The Serbian Eastern Orthodox Diocese for the U.S. and *293 Canada v. Milivojevich, 426 U.S. 696, 96 S.Ct. 2372, 49 L.Ed.2d 151 (1976); Wilkerson v. Battiste, 393 So.2d 195 (La.App. 1 Cir.1980). This prohibition extends to matters of religious discipline, faith, or custom, as well as to the appointment and removal of ministers. Milivojevich, supra; Joiner v. Weeks, 383 So.2d 101 (La.App. 3 Cir.1980). However, there are limits to this prohibition, and in those cases where religious doctrine is not involved, or may be deferred to, civil courts retain the power to resolve disputes. LeBlanc v. Davis, 432 So.2d 239 (La.1983); Bourgeois v. Landrum, 396 So.2d 1275 (La.1981); Thomas v. Craig, 424 So.2d 1090 (La.App. 1 Cir.1982); Rose Hill Baptist Church v. Jones, 425 So.2d 348 (La.App. 3 Cir.1982); Wilkerson v. Battiste, supra.

Although Hawthorne II is concerned with the donation of equipment instead of money as in Hawthorne I, this suit once again involves the parties in a controversy that is ecclesiastical in nature. At the hearing on the exceptions and the motion to dissolve the writ, the trial court listened to testimony from Couch, Hawthorne, Sam Noble (the other member of Healthworks), and Mark Batterton (the manager of Healthworks).[3] The trial court found that there was no doubt that the equipment and hangar space had been donated to satisfy a tithing obligation, and that backtithing was at the core of the parties' positions as to the property at issue.
The transfer of ownership of the equipment is evidenced by three acts of donation that were executed on May 22, 2003, and were signed on behalf of Healthworks by Batterton as CFO. These acts of donation list Healthworks as the donor and Apostolic Tabernacle, Inc., as the donee. Couch then wrote three letters on May 27, 2003, to Healthworks to serve as receipts of the donations for tax purposes.
Hawthorne testified that he was not aware of these donations until May or June of 2005. Hawthorne stated that Batterton lacked authority to donate Healthworks' property, and that he never authorized Batterton to execute the donations. Noble stated that he did not become aware of the acts of donation until a few weeks prior to the hearing on the exceptions. Batterton testified that Noble had said that the equipment was going to be donated to the church to take care of some of the backtithe. Batterton could not recall actually signing the acts of donation.
Couch had discussions with Noble, Hawthorne, and Batterton about tithing, and specifically about not decreasing Healthworks' income subject to tithing by deducting certain expenses. Couch recalled that Noble felt that some backtithing was owed to compensate for tithing that had been overlooked. Couch also recalled Noble saying that donated equipment could be used against any backtithe that was owed by Healthworks.
Noble believed that the discussions regarding backtithing took place in 2000. One occurred during a budget meeting for Healthworks, when Couch was present to give advice. After discussing the matter with Couch, Noble felt that they should pay backtithes so the company would be blessed. Noble admitted that Hawthorne was not supportive of having to pay backtithes, but recalled that Hawthorne agreed to go along with it.
Hawthorne thought the discussion with Couch about backtithing took place at a *294 budget meeting in 2003. At the time, Healthworks was in financial trouble. Hawthorne remembered Couch telling them that if they paid the tithes correctly, then Healthworks would be blessed. Couch thought Healthworks was not paying the proper amount of tithe because certain operating expenses were being deducted from income before the tithe was calculated. Hawthorne testified that his response was to tell Couch that what Couch was saying was "false doctrine." Hawthorne further testified that although he initially said that he would go along with the idea of backtithing, telling Batterton and Noble that he would submit to Couch, he soon disagreed that it was a valid debt. Hawthorne said he disputed Couch's concept of how the tithe for Healthworks was to be calculated, but he submitted to it.
Noble explained that because Healthworks was facing financial difficulties, he and Hawthorne began selling Healthworks' assets. Noble came up with the idea that instead of selling some of the equipment, they would donate it to the church and the value would be deducted from what they owed in tithes. Noble recalled that when he told Hawthorne about this idea, Hawthorne did not object and said that if it was a debt, they would pay their debts.
Hawthorne testified that he agreed to the backtithes, although he thought it was wrong and a false teaching. Hawthorne added that he "agreed" to it, but never "executed" it. Later in his testimony, Hawthorne stated that he did not tell Batterton and Couch that he "agreed" to the backtithe, but only that he would "submit" to it. Hawthorne also denied telling Noble that the backtithe was a debt and they were going to pay it, because he did not view it as a debt.
Couch said that both Hawthorne and Noble told him to keep the church's airplane in their hangar, but there was never any discussion about payment of rent. He said that when asked, he agreed that $250.00 per month would be a fair amount for them to deduct from their tithe obligation in return for the church's use of the hangar. Noble recalled speaking with Couch about the church's plane staying in the hangar in return for a rent that would be offset against the amount owed as backtithe, and that Hawthorne agreed to this.
Appellants' attorney, James Rountree, asked the witnesses numerous questions about how donations were treated within the church. He questioned Couch about whether donations would go to Couch or the church if the donations were for purposes of tithing. When Couch answered that the donations would go to the church, Rountree asked Couch about whether tithes go to the "Levite" in his religion. Rountree also examined Couch about the difference between an offering and a tithe. Rountree asked Noble about the differences between a donation and an offering, and whether the tithe goes to the Levite and the offering goes to the church. Rountree asked Batterton about whether tithes go to the pastor and offerings go to the church.
Rountree examined Hawthorne about why he disagreed with Couch regarding backtithes. Hawthorne explained that he thought that Couch was giving false teachings on the issue. Rountree also asked Hawthorne about the difference between offerings and tithes.
In addition to the testimony, another indication that this is a religious dispute is a June 16, 2004, letter from Rountree to Couch, in which Rountree wrote, "Mr. Hawthorne and I both prefer to deal with this religious problem in a religious forum, but that requires your agreement." In a *295 specific reference to the equipment at issue, Rountree also wrote in this letter:
You may recall that Messrs. Hawthorne and Noble discussed transferring certain property to you consisting of a dirt buggy, aircraft hangar, welding machine and trailer, gooseneck trailer, and bulldozer, and perhaps other things. Mr. Hawthorne advises that he discussed the transfer of these items in connection with your assertion that he owed "back tithes" for failing to contribute 10% of Healthworks' expenses.
As you will certainly understand under the circumstances, Mr. Hawthorne no longer desires to transfer this property to you unless he receives fair market value for it. Please advise within ten days whether you wish to purchase these items or return them.
That letter was followed by a May 25, 2005, letter from Hawthorne to Couch. Most notably, Hawthorne wrote, "Since you were made aware in writing on June 16, 2004 that it was not my desire to transfer ownership of certain equipment listed below in connection with `Back Tithe' owed to you that I strongly dispute is accurate or true." The equipment listed in the letter included the bulldozer, welding machine, and trailer. Clearly, Hawthorne believed that the validity of the donations and the accuracy of Couch's concept of back tithes were intertwined.
What is apparent is that Hawthorne I and II are both centered on Hawthorne's acquiescence in, and then reluctance about, Couch's theory of how Healthworks' income should be calculated so as to maximize the tithe to his church. Hawthorne obviously believed that Couch's theory was false doctrine without support in the religion. This is an ecclesiastical dispute in which this court is prohibited from interfering. The exception of lack of subject matter jurisdiction was properly granted.
Res Judicata
The grounds for the exception of res judicata are set forth in La. R.S. 13:4231, which provides, in relevant part:
Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:
* * * * *
(2) If the judgment is in favor of the defendant, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action.
Under La. R.S. 13:4231, a second action is precluded by res judicata when all of the following are satisfied: (1) the judgment is valid; (2) the judgment is final; (3) the parties are the same; (4) the cause or causes of action asserted in the second suit existed at the time of final judgment in the first litigation; and (5) the cause or causes of action asserted in the second suit arose out of the transaction or occurrence that was the subject matter of the first litigation. Burguieres v. Pollingue, XXXX-XXXX (La.2/25/03), 843 So.2d 1049.
The purpose of the doctrine of res judicata is to promote judicial efficiency and the final resolution of disputes. Avenue Plaza, L.L.C. v. Falgoust, 96-0173 (La.7/2/96), 676 So.2d 1077. However, the doctrine of res judicata is stricti juris, and any doubt concerning application of the principle of res judicata must be resolved against its application. Kelty v. Brumfield, 93-1142 (La.2/25/94), 633 So.2d 1210.
*296 The cause of action asserted by Hawthorne and Healthworks certainly existed at the time of the original lawsuit, which was filed in July of 2004. This is plainly evident from the petition in the second suit, which states that Couch had been in possession of the equipment at issue since 2003. It is also evident from the June 16, 2004, letter from Hawthorne's attorney concerning the transfer of the equipment to Couch, as well as from a July 2005 note from Hawthorne to Noble which included a calculation sheet that listed the hangar as a contribution equivalent to $250.00 each for the months of March and April in 2003.[4]
Although in this lawsuit appellants are complaining about the alleged donation of equipment and use of a hangar, as opposed to the donation of money at issue in Hawthorne I, this cause of action arises out of the transaction or occurrence that was the subject matter of Hawthorne I.
Hawthorne and Healthworks contend that res judicata does not apply in this matter because the trial court in the first lawsuit lacked subject matter jurisdiction. In support of their argument, they cite Kelty v. Brumfield, supra, where the supreme court stated that a claim is not barred by res judicata when the court in which the first action was brought lacked subject matter jurisdiction.
In LoCicero v. Jefferson Parish Dept. of Fleet Management and Human Resource Management, 98-521 (La.App. 5th Cir.12/16/98), 722 So.2d 1205, writ denied, 99-0527 (La.4/23/99), 742 So.2d 882, the Fifth Circuit faced the issue of whether a final judgment sustaining an exception of lack of subject matter jurisdiction could form the basis for an exception of res judicata in a second suit subsequently brought in the same court and based on the same transaction or occurrence. In deciding that it could, the LoCicero court noted that in Kelty, supra, and the cases cited therein, the second forum was different from the first, and typically the second forum had jurisdiction over the claim. The court also reasoned that:
The purpose of the concept of res judicata is to put an end to disputes between the same parties which arise from the same transaction or occurrence, see La. R.S. 13:4231, Comments-1990(a). While we recognize that a judgment rendered on the merits by a court without subject matter jurisdiction is generally a nullity, that rule cannot be applied to a judgment like the present one where the decision initially made was simply whether the court could proceed further with the case. Pursuant to La. Code Civ. Pro., Art. 925(A)(6), relating to the declinatory exception of lack of jurisdiction over the subject matter of the action, district courts are required to exercise their threshold jurisdiction in deciding this issue. It would be anomalous indeed were it to be held that a judgment sustaining this exception would be a nullity for res judicata purposes in a subsequent suit in the same court. Such a ruling would permit endless re-litigation of that issue in direct contravention of the policy underlying the concept of res judicata.

LoCicero, 722 So.2d at 1209-10.
Permitting Hawthorne and Healthworks to escape the effects of res judicata in this matter solely because no civil court has jurisdiction to hear cases involving the interpretation of ecclesiastical doctrines would obviously thwart the purpose behind the doctrine of res judicata to prevent costly and unnecessary relitigation. The *297 judgment in Hawthorne I where the trial court dismissed Hawthorne's demands with prejudice can serve as the basis for the exception of res judicata in this suit.
Hawthorne and Healthworks also argue that res judicata does not apply in this matter because Hawthorne I and Hawthorne II do not involve the same parties.
Although one of the requirements for the application of res judicata is that the parties be the same, it has been stated that this requirement does not mean that the parties must have the same physical identity, but that the parties must appear in the same capacities in both suits. See Burguieres v. Pollingue, supra.
Healthworks was not a named party in Hawthorne I, but Hawthorne clearly brought that lawsuit on behalf of himself and Healthworks. In fact, when dismissing Hawthorne I, the trial court wrote in its reasons for judgment that "[t]he petition seeks a return of excessive tithes, damages and attorney fees on behalf of Hawthorne and Healthworks International." Emphasis added. Moreover, when addressing the exception of no right of action filed by defendants in that first suit, the trial court also noted in its reasons for judgment that Hawthorne had conceded that he must amend his petition to include Healthworks as a party plaintiff.[5] Nevertheless, Healthworks was not a party in any capacity in Hawthorne I. Accordingly, the exception of res judicata was properly granted as to Hawthorne's claims in Hawthorne II, but it did not bar Healthworks' cause of action in that suit.
Attorney Fees
Appellants also contest the award of attorney fees for the wrongful issuance of the writ of sequestration on the ground that seizure of the equipment was proper at it was owned by Healthworks.
The grounds for sequestration are set forth in La. C.C.P. art. 3571, which states:
When one claims the ownership or right to possession of property, or a mortgage, security interest, lien, or privilege thereon, he may have the property seized under a writ of sequestration, if it is within the power of the defendant to conceal, dispose of, or waste the property or the revenues therefrom, or remove the property from the parish, during the pendency of the action.
The application for a writ of sequestration is governed by La. C.C.P. art. 3501, which provides:
A writ of attachment or of sequestration shall issue only when the nature of the claim and the amount thereof, if any, and the grounds relied upon for the issuance of the writ clearly appear from specific facts shown by the petition verified by, or by the separate affidavit of, the petitioner, his counsel or agent.
The applicant shall furnish security as required by law for the payment of the damages the defendant may sustain when the writ is obtained wrongfully.
Finally, La. C.C.P. art. 3506 contains the provisions for dissolution of the writ and for damages for wrongful issuance:
The defendant by contradictory motion may obtain the dissolution of a writ of attachment or of sequestration, unless the plaintiff proves the grounds upon which the writ was issued. If the writ of attachment or of sequestration is dissolved, the action shall then proceed as if no writ had been issued.

*298 The court may allow damages for the wrongful issuance of a writ of attachment or of sequestration on a motion to dissolve, or on a reconventional demand. Attorney's fees for the services rendered in connection with the dissolution of the writ may be included as an element of damages whether the writ is dissolved on motion or after trial on the merits.
The writ of sequestration is an extremely harsh remedy, and the writ can only be maintained when the formalities of the law have been strictly complied with by the parties seeking the writ. Burton v. Jardell, 589 So.2d 610 (La.App. 2d Cir. 1991). The articles providing for the writ of attachment must also be strictly complied with because that remedy is likewise extremely harsh. See Barnett Marine, Inc. v. Van Den Adel, 96-1029 (La.App. 5th Cir.4/9/97), 694 So.2d 453, writ denied, 97-1236 (La.9/26/97), 701 So.2d 983. The validity of the attachment process is determined on the facts known and existing at the time the attachment is requested. Id.
Once Couch motioned to dissolve the writ, the burden was on plaintiffs to prove the grounds upon which the writ was issued. Plaintiffs failed to meet their burden.
Hawthorne and Healthworks filed their amended petition which added Apostolic Tabernacle, Inc., as a defendant on July 20, 2005, but this was 15 days after the trial court signed the order issuing the writ of sequestration. Therefore, at the time the writ was issued, plaintiffs had alleged that the equipment was in Couch's possession, and that when they attempted to recover the equipment from him, he presented the May 2003 acts of donation. In addition, although the petition never referenced the owner of the airplane that plaintiffs sought to be seized under a lessor's privilege, the inference was that the airplane was owned by Couch as he was the only defendant to the action at the time.
Couch had accepted the equipment on behalf of the church, and indeed some of the equipment was seized at his home, but he was not the owner of the equipment, as was reflected in the acts of donation which listed Apostolic Tabernacle, Inc., as the donee. The airplane also was not owned by Couch, and plaintiffs never established that Couch as an individual had entered into a lease of the hangar. The amended petition that added Apostolic Tabernacle, Inc., as a defendant did not cure these deficiencies in the writ which Couch had already motioned to dissolve. La. C.C.P. arts. 3501 and 3571 do not permit an amendment once the defendant has moved to dissolve a conservatory writ. Hancock Bank v. Alexander, 256 La. 643, 237 So.2d 669 (La.1970).
Accordingly, we find no error in the trial court's dissolution of the writ of sequestration and the award of attorney fees and expenses of $22,852.19.

DECREE
At appellants' cost, the judgment is AFFIRMED.
NOTES
[1] During the relevant periods, Hawthorne's ownership interest in Healthworks ranged from 50% to 60%.
[2] In his affidavit attached to the original petition, Hawthorne asserted that both he and Healthworks joined in the petition because it was not clear whether the equipment or hangar was owned by Healthworks or him.
[3] Although Hawthorne is no longer a member of Couch's church, Noble still belongs to Couch's congregation.
[4] Hawthorne testified that he did not participate in making these calculations, although he knew about them.
[5] Hawthorne did not appeal the granting of the exception of no right of action. This court noted in a footnote that the trial court was correct in granting that exception in regards to claims filed by Hawthorne on behalf of Healthworks. Hawthorne v. Couch, supra, 911 So.2d at 910.