962 So.2d 1154 (2007)
Patsy WASHINGTON, et al., Plaintiffs-Appellants
v.
Reverend Louis JAMES, et al., Defendants-Appellees.
No. 42,345-CA.
Court of Appeal of Louisiana, Second Circuit.
August 15, 2007.
*1155 Smith & Nwokorie, by Anselm N. Nwokorie, Brian G. Smith, Monroe, for Appellants.
The Herring Law Firm, A.P.L.C., by Charles E. Herring, Jr., for Appellees.
Before WILLIAMS, GASKINS and MOORE, JJ.
GASKINS, J.
The plaintiffs, Patsy Washington, Lendy Kennedy, Billy Ray Rhodes, Carlton Rhodes, and Robert Louis Reed, appeal from a trial court judgment finding that they were without authority to incorporate Evergreen No. 1 Missionary Baptist Church in Bastrop, Louisiana, and that some of the plaintiffs were not members of the church and had no right or cause of action. For the following reasons, we affirm.

FACTS
The church at the center of this controversy was organized in 1902 as Evergreen Baptist Church. Immovable property was purchased by the unincorporated congregation that year. At some point, the name was changed to Evergreen No. 1 Missionary Baptist Church (Evergreen No. 1). The plaintiffs' ancestors were members of the church, as were those of one of the defendants, Earlean German, the secretary and bookkeeper of the church. The plaintiffs, who are all related, became members of the church as they grew up in the community. Billy Ray Rhodes, Carlton Rhodes, and Robert Louis Reed moved away from the area more than 20 years *1156 ago. However, they claimed that they continued to financially support the church by contributing money to rebuild the church in the 1990s. Billy Ray Rhodes claimed that he personally laid the foundation for the present church building. They also asserted that they attended the church every few years when they returned to the area for family reunions. Patsy Washington and Lendy Kennedy remained active members of the church.
In 2003, Rev. Louis James was hired as the pastor of the church. At that time, there were approximately ten adult members actively attending the church. Under Rev. James' leadership, the membership increased to more than 40. According to the defendants, a dispute arose between Ms. Washington, Ms. Kennedy and the pastor. The plaintiffs commenced efforts to seize control of the church property and to oust Rev. James.
According to the plaintiffs, they considered themselves to compose the membership of the church and, at a family meeting, decided to incorporate the church as a nonprofit corporation. Articles of incorporation were filed with the Louisiana Secretary of State's office on August 10, 2006, forming the Evergreen No. 1 Missionary Baptist Church, Inc. (Evergreen, Inc.). The plaintiffs then changed the locks on the church door, excluding Rev. James and the other members of congregation for a period of nine days. In September 2006, they also sent a letter to Rev. James telling him to resign as pastor or they would commence legal action.
Rev. James and the other members of the congregation gave notice of a meeting to elect officers, adopt bylaws, create a board of trustees and a finance committee, and to incorporate the church. The meeting was announced in the Sunday and Wednesday services, a notice was posted on the door of the church, and efforts were made to personally telephone all members on the church roster, including Ms. Washington and Ms. Kennedy. The meeting was held on October 17, 2006, and the New Evergreen Baptist Church (New Evergreen) was incorporated.
On November 6, 2006, the plaintiffs filed a petition for declaratory judgment, temporary and permanent injunction, and application for a writ of quo warranto. Named as defendants were Rev. James, Earlean German, and the board of trustees of New Evergreen, composed of Rose Brooks, Dorica Doaty, and Edna Chism. The plaintiffs claimed that the defendants were without authority to execute documents purporting to usurp, transfer, and convey church property to New Evergreen. A temporary restraining order was issued in favor of the plaintiffs to stop a meeting scheduled for late November 2006. The purpose of the meeting was for the church congregation to vote on whether to transfer the church's assets to New Evergreen.
The defendants filed an answer and exceptions of no right and no cause of action and failure to join a necessary party. The defendants claimed that Billy Ray Rhodes, Carlton Rhodes, and Robert Louis Reed had no right of action because they were not members of Evergreen No. 1. Further, they attacked the alleged incorporation by the plaintiffs, arguing that it was done without notice to the rest of the congregation of the unincorporated religious organization. The defendants claimed that the plaintiffs were not trustees of the church at the time they sought to form a corporation and that their actions did not transfer any assets of Evergreen No 1.
The defendants asserted that the plaintiffs had no cause of action because there was no meeting to incorporate and no transfer of assets to the corporation. The defendants contended that the plaintiffs failed to join a necessary party because *1157 they did not join Evergreen No. 1 or New Evergreen. The defendants argued that the trial court had jurisdiction over this matter because the issues before the court concerned corporations and property transfers rather than doctrinal issues.
A hearing on the exceptions was held in November 2006. The trial court framed the issues as who is a member of the church, how that is determined for voting purposes, and whether the temporary restraining order should be dissolved. Earlean German testified that she has been a member of the church for more than 50 years and has been the church secretary since 1971. Ms. German detailed the manner in which members are accepted at the church. A person had to be 18 years old and a member in regular standing to vote. She said that she updates the roll every year to delete those who no longer come to church. Ms. German testified that sometimes members are voted off the roll. She submitted the current list of membership. According to Ms. German, Ms. Washington and Ms. Kennedy are voting members of the church, but Billy Ray Rhodes, Carlton Rhodes, and Robert Louis Reed are not.
Ms. German detailed the meeting of October 2006 when the defendants purported to incorporate the church as New Evergreen. She submitted the minutes of the meeting and the sign-up sheet of members who were present and voting. She stated that officers were elected, bylaws were adopted, a board of trustees and a finance counsel were created, and the name of the church was changed to New Evergreen. Under the new bylaws, a member must have attended at least once in a three-month period, unless ill, and must be at least 15 years of age to vote on church business. She outlined the extensive measures that were taken to notify the congregation of the meeting. Ms. German stated that another meeting was scheduled in November 2006 to vote on whether to transfer the assets of Evergreen No. 1 to New Evergreen.
Rev. James testified that he came to the church in 2003. Billy Ray Rhodes, Carlton Rhodes, and Robert Reed were not on the membership list when he arrived. He corroborated Ms. German's testimony that if members don't come for about three months, they are taken off the roll. He also stated that sometimes people are voted off the roll and sometimes he just tells the church secretary to take them off.
Billy Ray Rhodes asserted that he and his family were largely responsible for the financial support of the church and paid for most of the cost of rebuilding the church building. He claimed that he joined the church in 1954 and has never moved his membership or joined any other church. However, he acknowledged that he acted as a deacon at a church in Texas and paid more than $40,000 to help build a church in Texas.
He testified that he and the other plaintiffs sought to have the church incorporated in August 2006. They did not have a meeting before incorporation. Billy Ray Rhodes stated that after the plaintiffs purported to incorporate as Evergreen, Inc., they changed the locks on the church and posted a notice on the door that no more keys would be made because the church "was under investagation [sic]." They also sent a letter to Rev. James asking for his resignation.
Patsy Washington testified that she has been a member of Evergreen No. 1 for 49 years and was assistant secretary of the church. She stated that the church did not have regular business meetings. Ms. Washington said that she was not aware of anyone ever being voted out of the church and stated that there was no set number of times that a person had to come to church to remain a member. Ms. Washington claimed that the church operated as a family *1158 and not as a congregation. She claimed that due to the large amount of money furnished by her family to rebuild and support the church, the defendants had no right to "move anything." The plaintiffs could not document the amount of money furnished to the church.
The parties stipulated that if Robert Reed and Carlton Rhodes were called to testify, their testimony would be substantially the same as Billy Ray Rhodes and Ms. Washington.
On December 28, 2006, the trial court signed a judgment in favor of the defendants. The court found that it had subject matter jurisdiction over the dispute. The court sustained the exceptions of no right and no cause of action, finding that Billy Ray Rhodes, Carlton Rhodes, and Robert Louis Reed are not voting members of the church and were not entitled to vote at a meeting held on November 29, 2006. In oral reasons for judgment, the court found that the Rhodes family no longer composed the exclusive membership of the church.
The trial court found that the plaintiffs' corporation, Evergreen No. 1 Missionary Baptist Church, Inc., purportedly formed in August 2006, was null and void and shall not be used to control the property, assets, or accounts of Evergreen No. 1. The court dissolved the temporary restraining order.
The trial court found that the defendants properly gave notice to the congregation of the October 2006 meeting. The court stated that the votes and resolutions of that meeting were valid, including the incorporation of the church as New Evergreen.
The court approved a meeting to be held in November 2006 by the defendants and the congregation of Evergreen No. 1 to consider the transfer of the church assets to New Evergreen. The court ruled that a majority vote of the members present and voting would control. The court accepted the defendants' membership list containing 41 names as representing the correct membership roster of the church. It ordered that only those persons on that list who are over 15 were allowed to vote at the November meeting. Both counsel were ordered to be present and preside or to find someone to preside at the meeting.
The propositions to be considered at the November meeting were whether to transfer the assets of Evergreen No. 1 to New Evergreen and, if the congregation voted not to transfer the assets, which entity should be entitled to the assets.
Following the November meeting, the trial court issued an order recognizing that the church voted to transfer its assets to New Evergreen. The court ordered the transfer to take place inclusive of the immovable property of the church.

SUBJECT MATTER JURISDICTION
The plaintiffs appealed the trial court judgment. They assert that the trial court exceeded its jurisdictional power by ruling that members who had lived away for many years, who had not withdrawn or transferred their membership, and who continued to make financial contributions had no voting rights.
According to the plaintiffs, the First Amendment of the United States Constitution prohibits courts from attempting to resolve church disputes requiring interpretation of church laws and practices. They argue that this constitutes interference with ecclesiastical and administrative matters within the church. The plaintiffs claim that the courts are without jurisdiction to determine church membership status. This argument is without merit.
The First Amendment of the United States Constitution and Article I, Section 8 of the Louisiana Constitution prohibit courts from interfering in ecclesiastical *1159 matters of religious groups. This prohibition extends to matters of religious discipline, faith, and/or custom. See Serbian Eastern Orthodox Diocese for the United States of America and Canada v. Milivojevich, 426 U.S. 696, 96 S.Ct. 2372, 49 L.Ed.2d 151 (1976); Hawthorne v. Couch, 40,162 (La.App. 2d Cir.9/21/05), 911 So.2d 907; Thomas v. Craig, 424 So.2d 1090 (La.App. 1st Cir.1982).
Not all church disputes necessarily involve purely ecclesiastical matters. Hawthorne v. Couch, supra. When a matter does not involve an entanglement of questions of church doctrine, the courts have jurisdiction to decide the issue. Jefferson v. Franklin, 96-1389 (La.App. 3d Cir.3/5/97), 692 So.2d 602. Examples of such justiciable controversies include the validity of church elections, the election of boards of trustees, and the determination of membership. See LeBlanc v. Davis, 432 So.2d 239 (La.1983); Smith v. Riley, 424 So.2d 1166 (La.App. 1st Cir.1982); Chimney Ville Missionary Baptist Church of Garland v. Johnson, 95-819 (La.App. 3d Cir.12/6/95), 665 So.2d 730.
The plaintiffs argue that the determination of church membership is an ecclesiastical matter requiring an interpretation of church doctrine, citing Macedonia Baptist Foundation v. Singleton, 379 So.2d 269 (La.App. 1st Cir.1979). That case is distinguishable from the present controversy. In Macedonia, former members of the church were excluded from membership as a matter of church discipline based upon church doctrine.
In the present case, the members were not removed from the rolls for any reason other than long years of nonattendance. The issues raised in this suit require a determination of who is a voting member of the congregation and which entity was validly incorporated. Under the facts presented here, these issues do not require any interpretation of church doctrine or ecclesiastical matters. Therefore, the trial court was correct in finding that it had subject matter jurisdiction over the controversy.
Further, we are struck by the fact that it was, of course, the plaintiffs who filed this lawsuit. To file a suit, raising the issues currently before the court, and then claiming that the court lacks jurisdiction to decide those matters is spurious at best.

DETERMINATION OF MEMBERSHIP
The plaintiffs argue that the trial court erred in using the bylaws of New Evergreen, drafted after October 7, 2006, in determining who is a member of the congregation. The plaintiffs claim that before the defendants incorporated in October 2006 as New Evergreen, the church did not conduct regular business meetings or vote on issues. Whenever anything needed to be done, the plaintiffs got together as a family and did it. When the plaintiffs decided to incorporate in August 2006, they did not have a meeting. They decided that, after the new church building was completed, it would be prudent to incorporate and took steps to do so.
The plaintiffs contend that the standard of review in this matter is de novo because the issues raised concern only issues of law. While this is true, we also agree with the defendants that resolution of some matters in this case requires findings of fact based upon an evaluation of the credibility of witnesses under the manifest error standard of review.
An appellate court may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong, and where two permissible views of the evidence exist, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. Bright Morning Star Missionary Baptist Church v. Brown, 38,333 (La.App. 2d Cir.5/28/04), *1160 877 So.2d 1003, writ not considered, 2004-2136 (La.11/15/04), 887 So.2d 466.
The trial court was presented with conflicting evidence regarding the custom of the church in determining membership and the manner in which church business was conducted. The plaintiffs claimed that there was no procedure for purging the membership rolls of dormant members. Further, they asserted that the church did not hold business meetings. They viewed themselves as constituting the church and simply decided when to take action. The plaintiffs maintain that they were entitled to incorporate the church and include the church building and property in Evergreen, Inc. because they made substantial financial contributions to the church and were almost exclusively responsible for building the current church building. They acknowledge that they gave no notice to any other members of the church before they formed their corporation. However, at trial, the plaintiffs presented no corroborating evidence of their membership in the church or the manner in which church business had been previously conducted. Most importantly, the plaintiffs failed to show that they constituted a majority of the membership of the church.
By contrast, the defendants presented documentation regarding the number of members in the church. The defendants testified that the church rolls were updated periodically and that members who no longer attended were excluded. The defendants also presented testimony concerning how members joined the church and were removed from the church roll, as well as the qualifications for voting on church business.
We do not find any error in the trial court's action in sustaining the defendants' exceptions of no right and no cause of action based on a determination that Billy Ray Rhodes, Carlton Rhodes, and Robert Louis Reed were not voting members of the church. These plaintiffs acknowledged that they no longer lived in the area and did not attend the church regularly. The trial court made a credibility determination between the testimony of the plaintiffs and that of the defendants. The trial court's determination as to membership was not entirely based upon the bylaws of New Evergreen, but was largely footed in the longstanding custom of the church regarding the qualifications for voting members. Although the trial court ruled that a member must be 15 years old to vote, as specified in the New Evergreen bylaws, we do not find that this specification constitutes reversible error. We affirm the trial court's ruling sustaining the defendants' exception of no right of action and no cause of action.

VALIDITY OF PLAINTIFFS' CORPORATION
The plaintiffs assert that the trial court erred in ruling that they had no authority to incorporate and that the corporation they formed could not exercise control over church property. The plaintiffs argue that an unincorporated association, such as Evergreen No. 1, may legally act through a majority of its members to incorporate and to authorize the transfer of its property to the corporation which is created. They urge that they acted as a family, as they had done in the past, to protect the assets of the family church handed down to them. These arguments are without merit.
Simply stated, the plaintiffs have failed to show that they had any authority to act on behalf of the church to form a corporation or to transfer any assets held by Evergreen No. 1 to Evergreen, Inc. The record shows that the church had 40 members in October 2006 and 41 members in November 2006. Only two of the five plaintiffs are active members of the *1161 church. They do not constitute a majority of the church's membership. The plaintiffs were without authority to act on behalf of the church in forming a corporation.
La. R.S. 9:1051 governs the transfer of ownership of church property in this instance:
A. Corporations unauthorized by law or by an act of the legislature enjoy no public character, although these corporations may acquire and possess estates and have common interests as well as other private societies.
Unless otherwise provided by its constitution, charter, bylaws, rules, or regulations under which it is organized, governed, and exists, any unincorporated nonprofit association may alienate or encumber title to immovable property to any person. For the purposes of this article, immovable property includes, without limitation, mineral rights, predial servitudes, and predial leases, and a transaction to alienate or encumber shall include, without limitation, transactions to mortgage, hypothecate, donate, or transfer title to immovable property. Any such transaction shall be authorized by resolution adopted by a majority of the members of the association who vote on the resolution at a special meeting called and held for that purpose. The resolution may designate a person or persons to act as agent for the purpose of effectuating the transaction. Notice of the special meeting, including the date, time, and place of the meeting and the substance of the contemplated resolution, shall be published, on two separate days at least fifteen days prior to the date of the meeting, in the official journal of the parish in which a majority of the members reside or, if none, in a newspaper of general circulation in the parish. A copy of the resolution and proof of publication as required herein shall be attached to each act effectuating the transaction.
B. The provisions of this article applicable to transfers of immovable property by unincorporated nonprofit associations shall not apply when the transfers are part of an incorporation of the association in which substantially all of the assets of the unincorporated nonprofit association are transferred to the new corporation. In such cases, R.S. 12:207(C) shall govern the transfer. [Emphasis supplied.]
The defendants properly notified all the members of the church and the majority of the church members voted to incorporate as New Evergreen. Then, New Evergreen gave proper notice to the church membership in compliance with La. R.S. 9:1051 regarding a vote to transfer the assets of Evergreen No. 1 to New Evergreen. The majority of the church approved the resolution. Therefore, the trial court was correct in rejecting the plaintiffs' claims and in finding that the defendants' corporation was created with proper authority. The trial court was also correct in holding that the unincorporated nonprofit association formerly known as Evergreen No. 1 properly transferred its assets to New Evergreen.
We also commend the trial court for its thoughtful handling of this matter and in counseling the parties toward establishing unity. The trial court wisely counseled:
It is my hope that you'll stay together as a church family and you all need to pray for unity and move forward with everybody who's been a part of this church across the years, staying the course and continuing to be supportive, to preserve this institution that's been around for more than a century and I understand the hard work and sacrifice that folks made back in the 1910, 20, 30, and 40 and all that when people had to work from can to can't for a dollar a day working behind mules and plantations *1162 and all that. . . . So, some sacrifices have been made to organize and sustain this church. Some of you here have paid a lot of money to make sure that it was preserved and that it's comfortable and all that and I commend you. . . . Unity is important and you know, there's no reason why you all can't stay together and continue to work together to move forward. This little bump in the road here is something that you can pass over and move on and I encourage you to do that.

CONCLUSION
For the reasons stated above, we affirm the judgment of the trial court in favor of the defendants finding that Billy Ray Rhodes, Carlton Rhodes, and Robert Louis Reed were not active members of Evergreen No. 1 and that they had no right of action or cause of action in this matter. We also affirm that portion of the trial court ruling finding that the corporation formed by the plaintiffs was created without authority and could not validly claim the assets of the church. We affirm that portion of the trial court judgment recognizing that the defendants properly incorporated and transferred the assets of Evergreen No. 1 to New Evergreen. The trial court correctly rejected the claims of the plaintiffs, Patsy Washington, Lendy Kennedy, Billy Ray Rhodes, Carlton Rhodes, and Robert Louis Reed. Costs in this court are assessed to the plaintiffs.
AFFIRMED.