665 So.2d 730 (1995)
CHIMNEY VILLE MISSIONARY BAPTIST CHURCH OF GARLAND, Plaintiffs-Appellees,
v.
Rev. Luke JOHNSON, et al., Defendants-Appellants.
No. 95-819.
Court of Appeal of Louisiana, Third Circuit.
December 6, 1995.
Bruce Achille Gaudin, Opelousas, for Chimney Ville Missionary Baptist Church.
Benjamin O. Burns, Lafayette, for Rev. Luke Johnson et al.
Robert Wayne Daigle, Lafayette, for First General Services of Southwest La.
Before KNOLL, THIBODEAUX and AMY, JJ.
THIBODEAUX, Judge.
This case arises from dissension among the deacon board members, pastor, and congregation of the Chimney Ville Missionary Baptist Church, a nonprofit corporation based in Garland, Louisiana on the question of who has the ultimate authority to decide the relocation of the church. The deacon board, acting as the corporation's Board of Directors, ratified an agreement entered into with a contractor by a member of the deacon board and an officer of the church to rebuild the church at its present site. The trial court concluded that the ratification was proper and signed a judgment in favor of the church/corporate body. Chimney Ville's pastor, Reverend Luke Johnson, and three members of the church appeal the trial court's judgment.
For the reasons which follow, we affirm.

FACTS
Since its articles of incorporation were filed in 1978, Chimney Ville Missionary Baptist Church has been a Louisiana non-profit corporation advancing Christian dogma in the small St. Landry parish community of Garland. Chimney Ville's charter sets forth the corporate hierarchy consisting of church members, church officers, and the board of deacons. Chimney Ville's deacon board is the functional equivalent of a corporate board of directors as Article V of the church's charter plainly states that, "All of the corporate *731 powers of this corporation shall be vested in and exercised by a Board of Directors who will also be the Board of Deacons." Chimney Ville's deacon board is comprised of the following nine members:

Johnson Group Siverand Group
Rev. Luke O. Johnson[1] Sam Siverand, Chair
Lester Johnson Lloyd Johnson
Marion Johnson Mason Smith
 Edward Charles
 Warren Charles
 John Celestine

Reverend Johnson advanced the notion that God sent him a vision in 1992 that instructed him to relocate Chimney Ville's church to Opelousas, Louisiana. On January 9, 1993, Reverend Johnson expressed God's vision to the Chimney Ville deacon board during a regularly scheduled meeting. Although no formal vote was taken, four of the six deacons attending expressed their desire to remain in Garland. Later, during an ordinary Sunday service held in January, 1993, Reverend Johnson expressed his vision to the Chimney Ville congregation which voted and approved Johnson's proposal by a 32-21 margin.
On September 13, 1993, fate brought Johnson's relocation vision to the fore as Chimney Ville's edifice burned to the ground. Chimney Ville's insurer paid more than $140,000.00 to settle its insured's fire loss claim. The first check for $118,600.00 was deposited at the Washington State Bank by Chimney Ville's secretary, Annie Valmont. On September 21, 1993, Sam Siverand, in his capacity as both deacon board chair and church vice president, joined with Annie Valmont to execute a contract with First General Services of Southwest Louisiana, Inc. (FGS). Under this agreement, Chimney Ville assigned to FGS all proceeds payable to the church by its insurer in settlement of the fire loss claim. More importantly, the agreement provided that FGS was to rebuild the church edifice at Garland, Louisiana.
Offended because Siverand and Valmont contravened the congregation's vote by executing a contract to rebuild at Garland, Reverend Johnson advised his congregation at an ordinary Sunday service on December 12, 1993 that Chimney Ville's secretary, Annie Valmont, and treasurer, Mason Smith, had been removed and replaced by Gloria Broussard as secretary and Marion Johnson as treasurer. Then, on December 23, 1993, Reverend Johnson presented a resolution to the Washington State Bank. The resolution, though drafted and signed exclusively by the Johnson Group, was held out to be a formal board decision. It authorized Reverend Johnson, Marion Johnson, and/or Gloria Broussard to withdraw Chimney Ville's $118,600.00 settlement proceeds and re-deposit the money at St. Landry Bank in Opelousas. More importantly, the resolution authorized Reverend Johnson, Marion Johnson, and Gloria Broussard to execute any contract involving the funds that they deemed proper. Washington State Bank released the money and it was re-deposited at St. Landry Bank.
By December 27, 1993, six of Chimney Ville's nine deacon board members, the Siverand Group, filed suit seeking injunctive relief against Reverend Johnson, Gloria Broussard, and Marion Johnson. Plaintiffs petitioned the court to prohibit the Johnson Group from spending the church's $118,600.00 settlement until the court could determine whether Johnson's December 12, 1993 resolution was valid.
On January 14, 1994, FGS followed suit by filing an injunctive action against Chimney Ville Missionary Baptist Church, Reverend Luke Johnson, Gloria Broussard, and Marion Johnson. FGS petitioned the court to enjoin the defendants from spending Chimney Ville's $118,600.00 settlement in any manner inconsistent with the assignment contemplated under the FGS contract.
Meanwhile, on January 18, 1994, Chimney Ville's deacons convened another board meeting at which all nine members assembled. At the meeting's outset, a lengthy discussion ensued in which Johnson Group members challenged the voting eligibility of Edward and Warren Charles of the Siverand Group. The Johnson Group maintained that Edward and Warren Charles failed to tithe in accordance with Article VIII of Chimney Ville's charter. Article VIII provides:

*732 This corporation shall be formed without capital stock and shall admit members by baptism, letters and experience of grace. Only those members who are in good standing and who have paid assessments set by the church and who have been members for a period of at least thirty (30) days shall have the power to petition and vote. Any person delinquent in assessments for a period of ninety (90) days or more are no longer members of the corporation; if assessments are paid up after a delinquent period of ninety (90) days or more, the member is required to wait for a period of thirty (30) days before s/he has the power to petition and/or vote. Financial assessments of members shall be tithing, pledging or monthly dues and Special Offerings as specified in the Bible, or as set by the corporation. (Emphasis added).
The Johnson Group alleged that, for more than ninety (90) days, Edward and Warren Charles failed to tithe 10% of their income to the church; thus, pursuant to Article VIII, both had relinquished their right to vote and neither remained members of the corporation. The Johnson Group also maintained that Reverend Luke Johnson, an ex officio board member, was now entitled to vote on deacon board matters. Siverand Group members contested each explanation of voter eligibility lodged by the Johnson Group.
Thereafter, John Celestine moved that Chimney Ville's edifice be rebuilt at Garland. The motion was approved by all six members of the Siverand Group while each Johnson Group member opposed the measure. Celestine then successfully moved that the money on deposit at St. Landry Bank not be spent without prior approval from a deacon board majority, and the joint signatures of Sam Siverand and Mason Smith. Mason Smith then moved to ratify the FGS contract executed by Sam Siverand and Annie Valmont. The motion was approved by all six from the Siverand Group while, in protest and defeat, Johnson Group members refused to cast their votes.
On January 20, 1994, Reverend Johnson, Marion Johnson, Lester Johnson, and Gloria Broussard filed an injunctive action against each member of the Siverand faction. Plaintiffs alleged that the Siverand Group usurped powers reserved for the corporate body by executing the FGS contract without approval from the congregation. Plaintiffs petitioned the court to enjoin defendants from contracting in the name of and/or disbursing funds belonging to the Chimney Ville Missionary Baptist Church.
All three cases the Siverand's, the Johnson's, and FGS's, were consolidated for trial. On November 29, 1994, the lower court decreed that the deacon board's resolutions were legal and binding, and that the FGS contract to rebuild at Garland was enforceable as written since the deacon board duly ratified it on January 18, 1994.

LAW & DISCUSSION
The Johnson Group appeals the district court's decision. Appellants contend that the trial court erred in concluding that FGS's contract was duly ratified by the board since three of the deacons supporting ratification, Sam Siverand, Edward Charles and Warren Charles, were not eligible to vote because they failed to meet the minimum requirements of church membership set forth in Article VIII. Appellants again argue that since these board members did not tithe 10% of their earnings to the church for more than ninety (90) days, each has lost his right to vote, and all are no longer members of the Chimney Ville corporation. Appellants insist that this dispute is governed by La.R.S. 12:218(A) & (C), which provide:
A. Corporations may levy dues or assessments, or both, upon their members, but only in accordance with authority conferred either by the articles or the by-laws.
C. The articles or by-laws may include provisions for the cancellation of membership, and for the forfeiture of shares, upon reasonable notice, for nonpayment of dues or assessments, and for the reinstatement of membership or shareholder status. (Emphasis added).
Appellants contend that Article VIII's requirements are legitimized by La.R.S. 12:218; therefore, this court should oust both Siverand *733 and the Charles gentlemen from church membership, divest all three of their voting rights, and declare the board's January 18, 1994 ratification of the FGS contract ineffective. Appellants' contentions lack merit.
Indeed, Article VIII's assessment and membership forfeiture scheme is sanctioned by La.R.S. 12:218; however, the statute's unambiguous language confirms that its provisions pertain solely to the corporation's members not to its directors. In fact, La. R.S. 12:218(C) specifically uses the terms "members" and "shareholders" interchangeably. In a like manner, Article VIII sets forth requirements for corporate membership exclusively; thus, individual directors need not comply with Article VIII's assessment requirements to maintain their status as voting members of the deacon board. Instead, Chimney Ville's directors are governed by the membership requirements set forth in Article IX which provides that, "The persons elected deacons of the church shall automatically become members of the Board of Directors." (Emphasis added).
Despite appellants' entreaty, Article VIII's requirements for corporate membership cannot be superimposed onto Article IX's board membership requirements. Upon this basis, we find that the FGS contract was duly ratified by a deacon board majority on September 18, 1994. The trial judge was correct in his interpretation of the church's articles of incorporation.
All costs of this appeal are assessed to defendants-appellants, Reverend Luke Johnson, Marion Johnson, Lester Johnson, and Gloria Broussard.
AFFIRMED.
NOTES
[1] Article VII designates the church pastor as an ex officio member of the deacon board.