STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

15-68

FAIRFIELD PENTECOSTAL CHURCH

VERSUS

ELWOOD JOHNSON, ET AL.

**********

APPEAL FROM THE
THIRTY-FIFTH JUDICIAL DISTRICT COURT
PARISH OF GRANT, NO. 22990
HONORABLE WARREN DANIEL WILLETT, DISTRICT JUDGE

**********

ULYSSES GENE THIBODEAUX
CHIEF JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Billy Howard Ezell, and Shannon J. Gremillion, Judges.

**AFFIRMED.**

Bobby L. Culpepper
Culpepper & Carroll, PLLC
525 East Court Avenue
Jonesboro, LA 71251
Telephone: (318) 259-4184
COUNSEL FOR:
        Plaintiff/Appellant - Fairfield Pentecostal Church

Edward Larvadain, Jr.
626 Eighth Street
Alexandria, LA 71301
Telephone: (318) 445-6717
COUNSEL FOR:
        Defendants/Appellees - Elwood Johnson and Billie Nell Johnson Oaks

**THIBODEAUX, Chief Judge.**

The plaintiff, Fairfield Pentecostal Church, Inc., appeals a judgment of the trial court establishing the voting membership of the Church as of a date certain. Finding no manifest error on the part of the trial court, we affirm the judgment.

## I.

## ISSUES

We must decide whether the trial court manifestly erred in establishing the voting membership of the Church as of a date certain.

## II.

## FACTS AND PROCEDURAL HISTORY

The Pentecostal church in Grant Parish began its existence in the 1940's with the conveyance of two adjacent tracts of land from A.C. and Bessie Johnson to the Pentecostal Assemblies of Jesus Christ of Black Creek and Fairfield Communities. In March 2009, the church became independent of the Pentecostal Assemblies and incorporated itself under the non-profit corporation laws of Louisiana as Fairfield Pentecostal Church, Inc. In August 2010, the church's pastor, Reverend Elmer Mundy, sought the church's approval of Reverend Darrell Franks as his successor due to Reverend Mundy's progressing age and disability. Whether Reverend Franks was approved or voted in as the pastor, or as the assistant to the pastor, is indeterminable from the record on appeal. He did, however, assume the duties of pastor in 2010, and the church subsequently split into two factions. There are allegations of intimidation and threats on both sides.

In early November 2013, Reverend Mundy and two individuals from the original pre-incorporated church purported to sell the church property for $1,000.00 and other consideration to Elwood Johnson and his sister Billie Nell Johnson Oaks (hereafter, "Johnson heirs" or "Johnsons"),[1] the heirs of the deceased A.C. and Bessie Johnson. The property was initially conveyed to the church with the condition that it revert to the Johnson heirs if the church disorganized. The November 2013 conveyance attempted to invoke the reversionary clause, declaring that the original church was no longer in existence and that the Johnson heirs were the present owners. The Johnsons constructed a fence and gate in front of the church property, removed records, and boxed up Reverend Franks' personal property, ostensibly for the purpose of protecting the property for the congregation and the community. In late November 2013, the subject suit, No. 22,990, was filed in the trial court on behalf of the incorporated church, without including the name of the individual representative filing on behalf of the church. In suit No. 22,990, the church sought to be maintained in possession of the property, and it sought a preliminary and permanent injunction and damages against the Johnsons for erecting the fence and preventing open access to the buildings.

The Johnsons filed an exception of subject matter jurisdiction, asserting that Reverend Franks had actually brought the suit in his capacity as pastor, that he was never duly elected as pastor, and that he had no real right in the property at the time of its disturbance. The Johnsons argued that whether Darrel Franks was pastor was an ecclesiastical issue which could only be decided by the

---

[1] Elwood Johnson resided in California; Billie Nell Johnson Oaks still lived in the Fairfield community and had attended the church within the last two years.

church members.  At the December 2013 hearing, without deciding who was pastor, the trial court denied the exception as to jurisdiction, stating that the court could determine non-ecclesiastical matters.  The trial court granted the injunction to the extent that the gates were to be unlocked for church attendance at all of the specific regular meeting times previously enjoyed.  The trial court also ordered that the records be returned.  Pretrial and status conferences followed.  The defendants and members of the anti-Franks faction allegedly appeared at a Wednesday night prayer meeting and held a business meeting, voting Reverend Franks out and voting Reverend Mundy in as pastor.  The Franks followers at the prayer meeting did not participate.

Reverend Franks filed a petition to intervene in the suit, attempted to add a third defendant, attacked the cash sale to the Johnsons, attacked the business meeting as improperly held, and sought to be restored as pastor.  The defendants excepted to the intervention as improperly adding a party, improperly using summary proceedings, and improperly cumulating actions; and they reconvened against Reverend Franks stating that he was never elected as *pastor* but only as *helper* to Pastor Mundy.

The defendants asserted that Reverend Mundy, reclaiming his pastoral leadership in order to end the dispute, had presided over the videotaped December 2013 business meeting, and that he properly adhered to the procedures required by the charter.  The defendants further alleged that Reverend Franks had bullied and abused members from the pulpit who disagreed with him, that he treated church funds as his own, that he moved $40,000.00 into an account that only he and his daughter (as church secretary) could access, that attendance fell by eighty-five percent, and that those who remained were mostly from Winn Parish where

3

Reverend Franks resided. At some point between the December 2013 business meeting and the defendants' February 2014 exceptions and reconvention, Reverend Mundy passed away.

In February 2014, Reverend Franks filed another original "petition," on behalf of himself *and* the church, *in the same suit number*, No. 22,990, wherein he named the third defendant that he had added in his intervention, plus three more defendants. He improperly revised the heading to include himself as plaintiff and to include the four new named defendants without leave and without seeking permission to do so. The petition re-asserted the allegations from the intervention and alleged that the four added defendants had illegally amended the articles and bylaws, designating Reverend Mundy as registered agent, and designating themselves as officers and trustees—James Finch as President; Robert Wyatt, Kenneth Wyatt, and Jamie Hyde as trustees.

In March 2014, following a February 26 phone conference with the parties' attorneys, the trial judge issued an order providing that, as no one denied that the church had been in possession of the property for over a year prior to the alleged disturbances, the church would be maintained in possession of the legally described immovable property. He further ordered that the Johnsons had sixty days to file a petitory action asserting title to the property; that Reverend Franks be recognized as pastor until further order by the court or proper vote by the church membership; that the parties through counsel exchange within five days their respective lists of members; that within five days of the exchange, the respective attorneys complete a list of members objected to with reasons for each objection; and that the attorneys attempt to determine the correct membership. Finally, the order scheduled a hearing date to determine membership if no agreement could be

4

reached. The order specifically stated that the court's involvement in determining the voting membership would be limited to non-ecclesiastical facts.

The hearing for determination of membership, initially scheduled for March, was finally held on May 23, 2014. After receiving six lists into evidence and hearing testimony from members of both factions, the trial court declared that the names on the plaintiff's exhibit B[2] and the defendants' exhibit D-2[3] constituted the current voting membership, minus the names of those who were now deceased or under-aged, plus the names of the five initial trustees on the corporate documents, who were also considered to be members. That judgment was rendered on June 11, 2014. The plaintiff appealed, and it is this judgment which is currently under review.

III.

## STANDARD OF REVIEW

An appellate court may not set aside a trial court's findings of fact in the absence of manifest error or unless it is clearly wrong. *Stobart v. State, Through DOTD*, 617 So.2d 880 (La.1993); *Rosell v. ESCO*, 549 So.2d 840 (La.1989). A reviewing court must keep in mind that if a trial court's findings are reasonable based upon the entire record and evidence, an appellate court may not reverse said findings even if it is convinced that had it been sitting as trier of fact it would have weighed that evidence differently. *Housely v. Cerise*, 579 So.2d 973 (La.1991). The basis for this principle of review is grounded not only upon the

---

[2]The plaintiff's exhibit B listed twenty-two names that Reverend Franks had obtained in early November 2013 before suit was filed.

[3]The defendants' exhibit D-2 contained copies of three pages from the church's "Resident Membership Roll" book that was not in use during Reverend Franks' term as pastor; it contained fifty-three names.

better capacity of the trial court to evaluate live witnesses, but also upon the proper allocation of trial and appellate functions between the respective courts. *Canter v. Koehring Co.*, 283 So.2d 716 (La.1973).

IV.

## LAW AND DISCUSSION

The matter that we are called upon to decide in this case is the authority of the trial court to establish the voting membership who are eligible to vote on whether to retain or dismiss Reverend Franks. There have been procedural problems in the case, as explained in the trial court's per curium opinion to this court in the appellant's preceding writ application, No. 14-810, which we denied in favor of the current appeal. The per curium opinion, attached correspondence and proposed orders, in connection with agreements by the parties, clarify the procedural background of the case and have been made a part of the record on appeal. Thus, we take judicial notice of the procedural issues discussed in the trial court's per curium opinion as supported in the record and raised by the plaintiff.

The overriding question in this appeal, and in the trial court's request for guidance, is whether the matters in dispute are ecclesiastical in nature and, therefore, beyond the reach of the courts, or whether they are within the jurisdiction of the courts. We find that the issues here involved are not ecclesiastical in nature and that the trial court can order that a special membership meeting be held and can establish the voting membership for that meeting.

*General Law*

The First Amendment to the United States Constitution provides: "Congress shall make no law respecting an establishment of religion, or prohibiting the

6

free exercise thereof." A similar provision is contained in article 1, section 8 of the 1974 Louisiana Constitution, which provides: "No law shall be enacted respecting an establishment of religion or prohibiting the free exercise thereof." These constitutional provisions forbid governmental interference with religious freedom. "Civil courts are prohibited from interfering in the ecclesiastical matters of a religious group, that is, in matters concerning religious discipline, faith, rule, custom or law." *LeBlanc v. Davis*, 432 So.2d 239, 241 (La.1983). However, when a court is asked to determine whether church members complied with the procedures set out in the church's bylaws when it conducted an election, ecclesiastical matters are not at issue. *Id.*

*Ambush v. Mount Zion Baptist Church, Inc.*, 11-1028, pp. 4–5 (La.App. 3 Cir. 2/22/12), 88 So.3d 1077, 1080-81.[4] Additionally, Louisiana law, specifically including the non-profit corporation statutes in Title 12, Chapter 2, of the Louisiana Revised Statutes, provides remedies to churches in resolving such disputes. *See* La.R.S. 12:207–12:269.

Our jurisprudence has long held that interpreting the articles and bylaws of religious corporations in conjunction with state law is within the province of the court. In the 1983 Louisiana Supreme Court case cited by *Ambush* above, the *Leblanc* court reversed the appellate court and reinstated the trial court's judgment, finding that the trial court had subject matter jurisdiction to determine that the pastor was properly removed by majority rule, pursuant to the church's founding resolutions, and to grant injunctive relief under La.Code Civ.P. art. 3601 where the dismissed pastor refused to relinquish his pastoral duties. The supreme court agreed with the trial court's interpretations of the founding resolutions of the church but stated that, even if the resolutions did not provide for removal by

---

[4]In *Ambush*, 88 So.3d 1077, this court affirmed the trial court's appointment of a special master to orchestrate a special election and affirmed the trial court's grant of a preliminary injunction allowing church members access to the church until the special election was had.

7

majority rule, the "neutral principles of law" approach for resolving non-ecclesiastical church disputes would call for a majority rule. *LeBlanc v. Davis*, 432 So.2d at 242.

In *Rose Hill Baptist Church v. Jones*, 425 So.2d 348 (La.App. 3 Cir. 1982), this court reversed the trial court's refusal to adjudicate a dispute where the church sought injunctive relief against a pastor who would not relinquish his duties or the church funds and records. In overturning the exception of jurisdiction and remanding to the trial court, this court quoted *Fluker Community Church v. Hitchens*, 419 So.2d 445 (La.1982). There, the court stated that "[r]efusal to adjudicate a dispute over property rights or contractual obligations, even when no interpretation or evaluation of ecclesiastical doctrine or practice is called for, but simply because the litigants are religious organizations, may deny a local church recourse to an impartial body to resolve a just claim." *Fluker*, 419 So.2d at 447.

In more recent decisions involving incorporated churches, the courts determine disputes according to a church's bylaws, its articles of incorporation, and Louisiana's non-profit corporation statutes. In *Mount Gideon Baptist Church, Inc. v. Robinson*, 01-749 (La.App. 1 Cir. 2/15/02), 812 So.2d 758, *writ denied*, 02-1229 (La. 6/21/02), 819 So.2d 1024, finding no remedy in the bylaws and articles of incorporation, the court applied La.R.S. 12:222, 12:224, 12:227, 12:229, and 12:230 to adjudicate disputes between two factions of the church. This included determining who had authority to call meetings and whether board elections and pastor removal actions taken at those meetings were valid or invalid based upon notice and the existence of a quorum. The trial court was also affirmed in its granting of a permanent injunction barring the former pastor from interfering in church affairs.

8

In *Mount Zion Missionary Baptist Church v. Jones*, 11-96 (La.App. 3 Cir. 2/1/12), 84 So.3d 674, this court affirmed the trial court's judgment finding removal of the pastor by the board of trustees effective, enjoining the pastor from holding an election to change the composition of the board, and voiding the election orchestrated by the pastor in violation of the court's order. There, the court discussed the bylaws, which provided two methods for removing a pastor, an expression vote by the voting members of the church, or a special business meeting called by the deacons and trustees. Where the bylaws defined the pastor as an officer of the church, this court upheld the trial court's decision to grant the church a preliminary injunction based upon La.R.S. 12:225(E), which allows the board of directors to remove an officer. The court discussed La.R.S. 12:222(A), which authorizes the adoption of bylaws by a non-profit corporation, and La.R.S. 12:222(B), which provides that those bylaws "shall operate merely as regulations among the shareholders or the members." The court then stated:

> The trial court based its decision that the church had made a *prima facie* showing sufficient to justify the grant of the preliminary injunction on La.R.S. 12:225(E). While we do note that the bylaws make other methods available for removal of a pastor, we do not find that those methods are exclusive.

*Mount Zion Miss. Baptist Church*, 84 So.3d at 679.

The jurisprudence historically indicates that a church's bylaws and articles of incorporation govern the church's internal procedures. However, when those procedures break down and the court is called upon to resolve the disputes, the court will review the non-ecclesiastical issues and interpret the church's regulations in conjunction with applicable state law, some of which is permissive, and some of which is mandatory.

9

A synthesis of the jurisprudence further indicates that courts very carefully isolate the procedural claims and avoid allegations involving religious doctrine. *See Glass v. First Pentecostal Church of DeRidder*, 95-1442 (La.App. 3 Cir. 6/12/96), 676 So.2d 724 (finding no subject matter jurisdiction over defamation and emotional distress claims that pastor had harassed the plaintiffs by observing their presence as "evil spirits in the congregation." *Id.* at 734); *Winbery v. La. College*, 13-339 (La.App. 3 Cir. 11/6/13), 124 So.3d 1212 (finding no subject matter jurisdiction over defamation claim because determining whether professors were teaching errant views required the court to delve into Baptist theology).

In *Chimney Ville Missionary Baptist Church of Garland v. Johnson*, 95-819 (La.App. 3 Cir. 12/6/95), 665 So.2d 730, the court addressed the expulsion of members procedurally without interfering in ecclesiastical matters. There, two factions of the church were in dispute over relocating the church, which burned down eight months into the dispute. The pastor and two newly installed officers formed the pastor group, and six of the nine-deacon board members formed the other group. The deacon board ratified a contractor agreement to rebuild the church at its present location and assigned part of the insurance proceeds to the contractor. The pastor group moved the money. Ultimately, both church groups and the contractor filed for injunctive relief. The three suits were consolidated. The pastor group asserted that three of the six deacons supporting the ratified contract were ineligible to vote for failure to tithe. The trial court found in favor of the deacon board.

The pastor group appealed, asserting that La.R.S. 12:218(A) and (C)[5] legitimized the church's requirements to divest the three deacons of their voting rights. In affirming the trial court's interpretation of the church's articles of incorporation, this court provided the following analysis of La.R.S. 12:218 in conjunction with two of the church's articles.

> Indeed, Article VIII's assessment and membership forfeiture scheme is sanctioned by La.R.S. 12:218; however, the statute's unambiguous language confirms that its provisions pertain solely to the corporation's members not to its directors. In fact, La.R.S. 12:218(C) specifically uses the terms "members" and "shareholders" interchangeably. In a like manner, Article VIII sets forth requirements for corporate membership exclusively; thus, individual directors need not comply with Article VIII's assessment requirements to maintain their status as voting members of the deacon board. Instead, Chimney Ville's directors are governed by the membership requirements set forth in Article IX which provides that, "The **persons elected deacons** of the church shall **automatically** become members of the Board of Directors." (Emphasis added).
>
> Despite appellants' entreaty, Article VIII's requirements for corporate membership cannot be superimposed onto Article IX's board membership requirements. Upon this basis, we find that the FGS contract was duly ratified by a deacon board majority on September 18, 1994. The trial judge was correct in his interpretation of the church's articles of incorporation.

*Chimney Ville Miss. Baptist Church*, 665 So.2d at 733.

---

[5]     A.   Corporations may levy dues or assessments, or both, upon their *members*, but only in accordance with authority conferred either by the articles or the by-laws.

. . . .

C.  The articles or by-laws may include provisions for the cancellation of *membership*, and for the forfeiture of shares, upon reasonable notice, for nonpayment of dues or assessments, and for the reinstatement of membership or shareholder status.

La.R.S. 12:218 (in pertinent part) (emphasis added).

11

Thus, without interfering in the church's tithing requirement itself, the court interpreted the Chimney Ville church's articles in conjunction with the Louisiana statute raised by the appellant in support of its position. Similarly, in the present case, the plaintiff argued that after the church split, members who stopped tithing could not vote. The defendants, on the other hand, argued that that the pastor was responsible for the split. Here also, without interfering in ecclesiastical matters, the trial court analyzed the church's regulations along with state law. We turn now to the plaintiff's asserted issue.

### Determining the Voting Membership

The plaintiff/appellant asserts that the trial court erred in "freezing the membership" at the May 2014 hearing, thereby preventing newer tithing members from voting on whether to dismiss Reverend Franks as pastor of the church. The plaintiff however admits in brief: "It was agreed that the Court had the authority to determine the membership." The agreement was based upon the failure of the two factions to agree on who the members actually were. The record reveals that the trial court did not "freeze" the membership, which would have been the equivalent of ordering that no new members could be accepted into the church. Rather, as discussed by the trial court in its per curium opinion to this court, the trial court merely set the record date, or cut-off date, for the members who would be allowed to vote at the special meeting in order to prevent each side from "stacking" the membership in its favor after the suit was filed in November 2013. The trial court's concern was based upon allegations at pre-trial conferences that new members were being brought in for purposes of litigation rather than for religious reasons. Accordingly, the trial court ordered that only those whom the court

determined to be members prior to the filing of suit would be allowed to vote on the dismissal of Reverend Franks.

We addressed this issue in *First Union Baptist Church of Alexandria v. Banks*, 533 So.2d 1305 (La.App. 3 Cir. 1988). There, an original board of directors filed suit to enjoin the pastor from continuing in his position. A newly elected board intervened, alleging that the old board had been removed and that the new board had authority to dismiss the suit. The trial court declared all prior meetings null and void and ordered that a general membership meeting be called by the Secretary of the church for the purpose of electing a new board of directors with specific authority to remove the pastor. The trial court then imposed eleven conditions for the upcoming procedures. This court found the church's bylaws and articles silent as to the removal of a board of directors/trustees and in conflict as to the removal of a pastor. It, therefore, applied La.R.S. 12:224 and found that a new board could be elected by a majority vote of the members, but the new board had not provided evidence that it had complied with the notice requirements of La.R.S. 12:230. This court affirmed the trial court's finding that the new board was not duly and properly elected, and found the court-ordered election an equitable solution.

One of the eleven conditions that the trial court in *Banks* imposed for the election stated that only those over the age of eighteen who had been members for at least six months would be eligible to vote at the membership meeting. This condition became a major issue on appeal. This court affirmed that condition and all other conditions imposed by the trial court, except for the requirement of in-

person voting, which this court found violative of La.R.S. 12:232(C)(1) under the facts in *Banks*.[6]

Many years before *Banks*, the fourth circuit in *State ex rel. Nelson v. Ellis*, 140 So.2d 194 (La.App. 4 Cir. 1962), adjudicated a dispute between two factions of a Baptist church in New Orleans that had been organized under the non-profit corporation statutes in 1919. There, the court consolidated three suits on appeal. Initially, the plaintiffs alleged that a membership meeting, at which a board of trustees was elected, was illegally called and held without a quorum. The trial court found for the plaintiffs and ordered a new election. Meanwhile, the defendants, comprised of the pastor, the church, and the illegally elected board of trustees, amended the charter and adopted bylaws. The plaintiffs filed a second suit to void those actions. The trial court voided the actions of the defendants but did not enjoin them from administering church affairs. The defendants expelled the plaintiffs and eighty other members from the church without notice, boycotted the election, compelled the plaintiffs to hold the meeting on the sidewalk, and used armed guards to physically force the expelled members from the church property. The plaintiffs filed a third suit for a restraining order to permit them to attend church and to void the expulsion proceedings as illegally carried out. The restraining order was granted, and the plaintiffs attended church for approximately six months.

Then, in dissolving the restraining order and denying a preliminary injunction, the trial court applied the rules in the Hiscox Standard Manual for Baptist Churches and found that the plaintiffs had not availed themselves of their

---

[6]Under La.R.S. 12:232(C)(1), a procedure for proxy voting is mandated, *if* not prohibited by the articles or bylaws of the non-profit corporation, an issue that the trial court can determine based upon the articles and bylaws before it.

appeal remedies under the Hiscox Manual. It subsequently denied a rehearing, stating that membership was an ecclesiastical matter. The defendants asserted that the plaintiffs agreed to these rules when they became members of the church.

The fourth circuit disagreed, finding that the church was an autonomous corporation under the laws of Louisiana, and that there was no mention of the Hiscox Manual in the church's charter when the expelled members joined the church; it found that the Manual was improperly admitted into evidence. The fourth circuit then set aside the judgments and remanded the case to the trial court with instructions to order a meeting of the entire membership, including the expelled members, for the purposes of electing a new board of trustees. The meeting was to be called in accordance with the church's charter and the non-profit corporation laws, and not inconsistent with specified civil procedure articles governing the authority to hold office.

Here, the trial court went to great lengths to obtain a membership list that was equitable to both factions of the church. Both factions were given ample time to prepare lists, and a special hearing was held on the issue on May 23, 2014. The court accepted live testimony of long-time members and officers who verified names on various lists entered as exhibits. Ultimately, the trial court accepted three pages from a membership roll book from around 2008 on behalf of the defendant faction, and it accepted a newer membership list that Reverend Franks had obtained at a church meeting shortly before suit was filed in November 2013. The trial court's reasons for judgment stated:

> On March 30, 2009, the Articles of Incorporation
> of Fairfield Pentecostal Church, Inc., were filed with the
> Louisiana Secretary of State.[3][7]  Article V indicated that

---

[7]Per the trial court's footnote 3:

the Church was formed as a non-profit corporation, organized on a non-stock basis, and all members in good standing of Fairfield Pentecostal Church, an unincorporated association, shall become members of the corporation upon the adoption and recordation of the articles.[4] [8]   Articles VII and VIII established an initial Board of Trustees, which were required to be members of the Church and at least 21 years of age.  The initial board consisted of: Bobby W. Newton, Michael Arledge, Kenneth Hyde, Alvin Mundy, and Tina Newton.[5] [9]

. . . . Article II of the bylaws governs Membership. Section 3 indicates that:  "[a]nyone who is eligible and accepts the foregoing obligations shall become a member of the church by registering his name and address with the pastor."  Article III, Section 7, sets forth the office of Secretary/Treasurer, who is charged with the responsibility of preserving "records of business proceedings and all other papers belonging to the church."

Ms. Tina Newton testified that she became secretary/treasurer of the church in 2004.  At that time, Reverend Alvin Mundy was pastor.  Ms. Newton testified that the church maintained a membership roll, which members signed after being admitted, until sometime around 2008 when she stopped seeing the ledger used to record new members.  Ms. Newton identified three pages as being copied from the membership roll book that had been used while she served as secretary/treasurer.  Those pages were admitted into evidence as Defendant Exhibit 2.  Ms. Newton testified that all of the people listed on Defendant Exhibit 2 had been admitted as members of the church.  She indicated that some had passed away, but that to her knowledge, none had been formally disfellowshipped.

---

The Court was provided by counsel in a pretrial conference with a copy of the Articles of Incorporation and Bylaws.  Neither document was introduced into evidence at any hearing.  However, both were referred to by witnesses and counsel.  The Court does not believe the contents of either are in dispute.  The Court believes that the failure to introduce them into the record was an evidentiary oversight.

[8] Per the trial court's footnote 4:  "The Articles were recorded on April 17, 2009, in Registry Number:  83,648, Charter Book 10, Page 128, records of Grant Parish."

[9] Per the trial court's footnote 5:  "The clear wording of the articles reveals that these individuals, if living, are members of the church.

Ms. Newton . . . indicated that in 2012, she resigned as secretary/treasurer, and that Ms. Geni Wyatt took over those positions.

Reverend Darryl Franks testified that he was called to be the pastor of the church in August of 2010. Reverend Franks indicated that he was not aware of a membership roll when he began attending in January of 2010. Reverend Franks testified that in October of 2013, he was approached by some un-named person in the church parking lot who told him he needed to leave the church. Reverend Franks testified that as a result of that incident, he called a business meeting of the church, at which time the members present at the meeting registered their names and addresses. This list was introduced as Exhibit B. Ms. Tina Newton testified that all of those persons named on Exhibit B were in fact members of the church.

. . . .

Reverend Franks has argued that most of the names of people on Defendant's Exhibit D-2 are not members of the church because they have not attended regularly, have not tithed, have turned in their keys or are attending church elsewhere on a regular basis.[6][10]

. . . .

Fairfield Pentecostal Church, Inc., is a not-for-profit corporation incorporated under the laws of the State of Louisiana. . . . Membership is governed by the articles of incorporation, bylaws, and in areas not otherwise specifically covered, the provisions of Louisiana Revised Statutes, Title 12. La.R.S. 12:210(I). Article II of the bylaws governs membership. Section 3 indicates that: "[a]nyone who is eligible and accepts the foregoing obligations shall become a member of the church by registering his name and address with the pastor." Both Exhibits D-2 and Exhibit B set forth the names and addresses of persons who at some point in time were accepted as members of the church. Both Ms. Newton and Reverend Franks testified that the church never took any action to remove a person listed as a member of the church. La. R.S. 12:232(A) provides that: "[u]nless otherwise provided in the articles or bylaws,

_____

[10] The trial court's footnote 6 states: "Each of these factors involves ecclesiastical determinations which are clearly beyond the authority of this Court."

every member of a corporation shall be entitled to one vote." The bylaws restrict voting to members who have attained the age of 16. This Court is aware of no statutory prohibition against a person being a member of more than one corporation. Given that no one took any action to remove any person as a member of the church, each person listed in Exhibit D-2 and Exhibit B is considered to be a member. As indicated by the articles of incorporation, the initial board of trustees, Bobby W. Newton, Michael Arledge, Kenneth Hyde, Alvin Mundy, and Tina Newton, are also deemed to be members. According to the church's bylaws, a member must be at least 16 to vote. Obviously, only those members who are currently living may vote.

We find the trial court's analysis thorough and very similar to this court's analyses in *Banks*, 533 So.2d 1305; *Mount Zion*, 84 So.3d 674; and *Chimney Ville*, 665 So.2d 730. Here also, the trial court carefully avoided ecclesiastical issues and referred only to the church's own bylaws, articles, and Louisiana non-profit corporation statutes. The transcripts of the hearings in the record further support the trial court's careful adherence to the law where the court repeatedly stopped questions and comments by the lawyers that involved church doctrine. As indicated in the trial court's footnote, the church's articles and bylaws were not entered into evidence at the hearing but had been supplied to the trial court and used by the parties in pre-trial conferences, and they were not in dispute. While we cannot speak to the content of those documents, the plaintiff has not appealed the substance of the documents or pointed to a single article of incorporation or bylaw that the trial court misquoted, misinterpreted, or misapplied. Additionally, the plaintiff points to no article, bylaw, statute or jurisprudence that supports its position. The plaintiff's complaint very broadly argues that the trial court had no authority to limit the membership to a certain date for voting purposes.

18

As seen in the cases discussed, the court has authority to determine non-ecclesiastical matters such as these. The trial court stated that its authority for setting the record date was La.R.S. 12:77.[11] Both La.R.S. 12:77 of the corporation law and La.R.S. 12:234 of the non-profit corporation law are entitled "**Fixing record date**," and both provide that the board of directors may fix a record date of those entitled to vote at an upcoming meeting sixty days in advance. In this case, as in *Banks*, where the membership was in dispute and the parties invoked the assistance of the court, the trial court determined that equity required that membership be set more than sixty days in advance of the meeting. Based upon the record on appeal, this was a reasonable and equitable solution, and perhaps the only solution where the membership dynamic had become a moving target. As stated, the plaintiff does not point to any regulation by the church or any authority whatsoever in support of its position that the trial court could not fix the date for the determination of voting membership. Likewise, "[t]he appellate court shall render any judgment which is just, legal, and proper upon the record on appeal." La.Code Civ.P. art. 2164.

Pursuant to La.R.S. 12:223(A) (emphasis added): "Every corporation *shall* keep at its registered office . . . share and membership records giving the names and addresses of the members in alphabetical order. . . . " It further provides: "Whenever membership is terminated, this fact *shall* be recorded in the share or membership record together with the date on which the membership ceased . . . ." *Id.* (emphasis added). We note that the church's failure to continue keeping a membership roll was violative of the mandatory provisions of La.R.S.

---

[11]Louisiana Revised Statues 12:77 was repealed effective January 31, 2015, as part of the enactment of the "Business Corporation Act." The subject matter of La.R.S. 12:77 is currently found in La.R.S. 12:1-707. *See* Disposition Table–2014 preceding La.R.S. 12:1-101.

12:223(A). The trial court determined at the hearing that none of the members on the original roll had been disfellowshipped; and it allowed another list of members gathered in November 2013 by Reverend Franks, who had kept no roll since his installment in 2010, to be counted toward the membership roll. In order to prevent the solicitation of new members for purposes of litigation, the trial court limited the membership to these two lists. We can think of no more equitable solution. Accordingly, we affirm the June 11, 2014 judgment of the trial court determining the voting membership for the special meeting regarding Reverend Franks.

### *Calling Business Meeting and Determining Procedure*

The plaintiff asserts that the trial court erred in ordering a special membership meeting, to be held on July 19, 2014, for the purpose of voting on whether to retain or dismiss Reverend Franks, and in determining the procedure to be followed at the meeting. The record indicates that the parties agreed to the July 19 meeting. While the court's authority to do what the members have not been able to do on their own is discussed in the jurisprudence above, we find that this assignment of error is not properly before us because it involves a July 11, 2014 order in another suit.

On June 25, 2014, the church, represented by Reverend Kenneth Hyde, filed a new suit, No. 23,293, naming Reverend Franks as defendant and seeking an injunction against him. The new suit indicates that a vote was taken on June 17, and that twenty-nine of the eligible voters, as determined by the June 11 judgment in suit No. 22,990, came out and voted to remove Reverend Franks. It further indicates that Reverend Franks and his supporters did not come out to vote. The petition asserts that if all voters on Reverend Franks' list had attended and

20

voted to retain Reverend Franks as pastor, a majority of the voting membership would still have voted to remove him.

The record before us indicates that, in responding to the suit against him, Reverend Franks filed numerous pleadings under the number and heading of the subject suit (No. 22,990) which was a suit for possession against the Johnsons. Likewise, the trial court issued orders under suit No. 22,990 which we find should have been issued under suit No. 23,293. These suits have not been consolidated. The pleadings are in dire need of clarification and correction before this Kafkaesque labyrinth of pleadings becomes more nightmarishly complex and bizarre.[12]

We are compelled to make these distinctions because the plaintiff in its second assignment of error seeks to appeal an order that arose one month *after* the judgment under review in suit No. 22,990; and, the order derived from a hearing-turned-conference in suit No. 23,293. While the June 11 judgment in suit No. 22,990 and the July 11 order in suit No. 23,293 are related, the subject matter of the order is more appropriate under suit No. 23,293. This is particularly true where the relief sought in the first suit for possession was granted; and the issues

---

[12]Following the June 11, 2014 judgment appealed here in suit No. 22,990, and following the June 25, 2014 filing of suit No. 23,293, the following pleadings and orders were filed under suit No. 22,990 and are part of the record on appeal, but a study of the content of the each pleading shows that it should have been filed under suit No. 23,293:

| 7-03-14 | Answer (to suit No. 23,293) and Third Party Petition by Franks; |
| 7-11-14 | Order regarding business meeting for vote on July 19 and procedure; |
| 7-15-14 | Order staying the business meeting scheduled for July 19; |
| 7-15-14 | Motion for New Trial on Order of 7-11-14 regarding business meeting; |
| 7-15-14 | Exception to Subject Matter Jurisdiction regarding meeting and procedure; |
| 7-15-14 | Order staying 7-15-14 Exception to Subject Matter Jurisdiction; |
| 7-22-14 | Answer to Franks' 7-03-14 Third Party Petition—by third party defendants. |

have now turned to the procedural problems of meetings and voting results and determining the will of the congregation regarding who they want for their pastor, their officers, and their trustees.

More specifically, at the July 3, 2014 hearing in suit No. 23,293, the electricity had gone out in the courthouse, and the parties convened on the balcony. Thus, the hearing was replaced by a conference. As indicated, the subject matter of suit No. 23,293 was a June 17 meeting during which the Hyde faction voted to terminate Reverend Franks. While on the balcony, all parties agreed to dispense with the results of the June 17 meeting and to hold another special meeting on July 19, 2014, to allow the congregation to vote again on who the pastor, officers, and trustees should be. The upcoming July 19 meeting, the subject of the court's July 11 order, would, therefore, have determined the relief sought in suit No. 23,293. The plaintiff in this appellate brief of the June 11 judgment in suit No. 22,990 has attempted to also appeal the July 11 order regarding the meeting and its procedure, which we find arises in the new suit No. 23,293. We do not have the record in suit No. 23,293 for consolidation of the two suits. Moreover, the plaintiff's motion for appeal in suit No. 22,990 does not address the July 11 order; it only seeks an appeal of the June 11 judgment in suit No. 22,990.

Accordingly, for the reasons discussed, we must pretermit ruling on the plaintiff's second alleged issue, as it is not properly before us.

V.

**CONCLUSION**

Based upon the foregoing, we affirm the June 11, 2014 judgment of the trial court determining the voting membership for a special vote on whether to

22

retain or dismiss Reverend Franks.  Costs of this appeal are assessed against the plaintiff.

**AFFIRMED**.